# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #026

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of May, 2017**, are as follows:

**BY WEIMER, J.**:

2016-C-1663     JAZZ CASINO COMPANY, L.L.C. v. CYNTHIA BRIDGES, SECRETARY, LOUISIANA DEPARTMENT OF REVENUE (Parish of E. Baton Rouge)

For the foregoing reasons, the decision of the appellate court is reversed, and the judgment of the district court is reinstated to the extent that it compels the Secretary of the Louisiana Department of Revenue to refund the amounts that Jazz overpaid in hotel occupancy taxes to the Louisiana Stadium and Exposition District and the New Orleans Exhibition Hall Authority, together with applicable interest, pursuant to La. R.S. 47:1621(D) and in accordance with this opinion.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.

JOHNSON, C.J., concurs in result.

**SUPREME COURT OF LOUISIANA**

**No. 2016-C-1663**

**JAZZ CASINO COMPANY, L.L.C.**

**VERSUS**

**CYNTHIA BRIDGES, SECRETARY,
LOUISIANA DEPARTMENT OF REVENUE**

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE*

**WEIMER**, Justice

The taxpayer in this matter seeks to compel the tax collector to perform statutory duties in connection with a judgment in a proceeding under La. R.S. 47:1621, *et seq*., that ordered a refund of hotel occupancy taxes overpaid by the taxpayer in several tax years. Finding that these statutory duties are ministerial, the district court issued a writ of mandamus to the tax collector to compel payment of the tax refund judgment. The court of appeal reversed and recalled the writ due to the lack of evidence needed to obtain a writ of mandamus.[1] Based on the ministerial nature of the constitutional and statutory duties owed by the tax collector in connection with the taxpayer's refund judgment, the decision of the appellate court is reversed, and the district court's judgment is reinstated.

---

[1] See La. C.C.P. art. 3862 (which requires proof that "the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice").

**FACTUAL AND PROCEDURAL BACKGROUND**

In connection with its operation of a land-based casino in New Orleans, Jazz Casino Company, L.L.C. (Jazz) entered into contracts with various hotels for rooms made available to casino patrons on a complimentary or discounted basis. Jazz was required to pay for a specific number of rooms for the duration of the contract even if the rooms were not used by Jazz patrons. As a result of these hotel room rentals, hotel occupancy taxes were remitted to the Louisiana Department of Revenue (Department). The taxes consisted of state general sales taxes and sales tax collected on behalf of the following three entities: Louisiana Tourism Promotion District (Tourism District), the Louisiana Stadium and Exposition District (Stadium District), and the New Orleans Exhibition Hall Authority (Hall Authority).

In August 2004, Jazz filed three claims for refund with the Department, alleging that Jazz overpaid hotel occupancy taxes for various hotel room rentals between October 1, 1999, and June 30, 2004. Following the denial of its claims by the Department, Jazz filed suit with the Louisiana Board of Tax Appeals (Board), seeking a determination of overpaid taxes in accordance with La. R.S. 47:1621. Under the terms of Jazz's contracts with the local hotels, the rental of the hotel rooms by Jazz was not found to be as a "transient guest." As a consequence of that finding, Jazz was exempt from the tax at issue. Subsequently, the parties jointly stipulated that Jazz's tax overpayments totaled $1,983,315.27 for the periods in question. Of these overpayments, two percent was state general sales taxes. The remaining 98 percent was collected by the Department on behalf the Tourism District, Stadium District, and Hall Authority.

On October 8, 2014, Jazz obtained judgment from the Board, which provided:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**
> that [Jazz] overpaid hotel occupancy taxes during the Taxable Period in the total amount, exclusive of interest, of $1,983,315.27;
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED**
> that the Department shall refund to [Jazz] $1,983,315.27, together with applicable statutory interest, pursuant to LSA-R.S. 47:1621(D)(1)[.]

This refund judgment was not appealed and is now final. See La. R.S. 47:1434 and 1438.

Subsequently, the Department remitted the portions of the judgment related to state general sales taxes and the taxes collected on behalf of the Tourism District. Therefore, only the taxes collected on behalf of the Stadium District and Hall Authority remain at issue.

When the Department failed to timely refund the amounts overpaid to the Stadium and Hall Authority in accordance with La. R.S. 47:1621, *et seq*., Jazz filed a petition for a writ of mandamus with the district court to compel satisfaction of the refund judgment. In its petition, Jazz alleged that the refund of the overpaid taxes is a statutorily-mandated duty enforceable by the judiciary (citing La. R.S. 47:1437(B) and 47:1621(D)(3)). Agreeing, the district court granted Jazz's request by judgment dated September 24, 2015, which provides:[2]

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED**
> that the Alternative Writ of Mandamus issued by the Court on August 31, 2015 is made peremptory and permanent directing … Secretary of the Department of Revenue, State of Louisiana to comply with the Judgment issued by the Louisiana Board of Tax Appeals on October 8, 2014 and remit all remaining amounts that have not yet refunded,

---

[2] Shortly after, the Department filed a motion with the Board to annul the refund judgment, contending the Board was without subject matter jurisdiction to order a refund of taxes the Department collected on behalf of the Stadium District and Hall Authority. The Board denied the Department's jurisdictional challenge, and the Board's judgment denying the Department's motion to annul was affirmed on appeal. See **Jazz Casino Co. v. Louisiana Department of Revenue**, 16-0180 (La.App. 1 Cir. 2/7/17) (unpublished). The Department's writ application is currently pending before this court, Docket Number 17-C-0423.

3

$1,613,851.85, along with applicable statutory interest, within thirty-five days of entry of this Judgment.

On appeal, the mandamus judgment was reversed and the writ of mandamus was recalled, based on a finding that Jazz had failed to prove it was unable to obtain relief by ordinary means or that the delay in obtaining such relief would cause injustice as required by La. C.C.P. art. 3862. In the absence of such proof, the appellate court found that Jazz failed to show it was entitled to mandamus relief, even if the duty of the Department's Secretary (Secretary) to refund overpaid taxes is a non-discretionary, ministerial duty. **Jazz Casino Co. v. Bridges, L.L.C.**, 15-1721 (La.App. 1 Cir. 6/6/16) (unpublished).

Jazz's writ application to this court was granted to determine whether Jazz is entitled to mandamus relief under the facts of this case. **Jazz Casino Co. v. Bridges, L.L.C.**, 16-1663 (La. 1/9/17), ___ So.3d ___.

## DISCUSSION

The state constitution divides governmental power among separate legislative, executive, and judicial branches and provides that no one branch shall exercise powers belonging to the others. **Hoag v. State**, 04-0857, p. 4 (La. 12/1/04), 889 So.2d 1019, 1022 (citing La. Const., art. II, §§ 1 and 2). "This trichotomous branching of authority furnishes the basis for the existence of an inherent judicial power that the legislative and executive branches cannot abridge." **Id.** "Likewise, the judicial branch is prohibited from infringing upon the inherent powers of the legislative and executive branches." **Id.** Thus, when litigants seek to invoke the power of the judiciary to compel another branch of government to perform or act, care must be taken in examining whether the action is within the confines of the judiciary's constitutional authority. **Id.**

4

Here, Jazz sought the issuance of a writ of mandamus by the judiciary to compel the Secretary, who is within the executive branch of government, to refund the amounts Jazz had overpaid in hotel occupancy taxes to the Stadium District and Hall Authority as ordered in the refund judgment. "Mandamus is a writ directing a public officer … to perform" "a ministerial duty required by law." La. C.C.P. arts. 3861 and 3863. In general terms, a writ of mandamus is an extraordinary remedy and "may be issued in all cases where the law provides no relief by ordinary means or where delay in obtaining ordinary relief may cause injustice." La. C.C.P. art. 3862. A "ministerial duty" is one "in which no element of discretion is left to the public officer," in other words, "a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." **Hoag**, 04-0857 at 7, 889 So.2d at 1024. If a public officer is vested with any element of discretion, mandamus will not lie. See, e.g., **Landry v. City of Erath**, 628 So.2d 1178, 1180 (La.App. 3 Cir. 1993).

The legislature has statutorily provided for the payment and collection of taxes pursuant to its constitutional authority. While having the power to tax,[3] the legislature must "provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." See La. Const. art. VII, § 3(A). In connection with this constitutional obligation, the legislature created the Board of Tax Appeals to "act as an appeal board to hear and decide ... disputes ... between a taxpayer and the collector of revenue." La. R.S. 47:1401.

---

[3] See La. Const. art. VII, § 1.

Utilizing its authority under La. Const. art. XII, § 10(C)[4] to "provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment," the legislature has afforded taxpayers the following three remedies to fulfill its obligation under La. Const. art. VII, § 3(A): (1) the "Claims Against the State" procedure, (2) the "Payment Under Protest" procedure, and (3) the "Overpayment Refund" procedure. **St. Martin v. State**, 09-0935, p. 4 (La. 12/1/09), 25 So.3d 736, 738. The procedures for these three remedies are set forth in La. R.S. 47:1481, *et seq.*; La. R.S. 47:1576, *et seq.*; and La. R.S. 47:1621, *et seq.*, respectively. **St. Martin**, 09-0935 at p. 4, 25 So.3d at 738. Only the provisions related to the first of these remedies, that is, the claims against the state procedure, expressly requires an appropriation of funds by the legislature. See La. R.S. 47:1483[5] and 47:1484.[6] Relative to the second and third remedies, the legislature enacted

---

[4] In pertinent part, La. Const. art. XII, § 10(C) provides:

> [The legislature] shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims.

[5] Concerning payment of approved claims utilizing the claims against the state procedure, La. R.S. 47:1483 provides:

> If the claim is approved and it should be an amount not exceeding one thousand dollars, the chairman of the Board of Tax Appeals shall issue a warrant upon the State Treasurer, for the amount for which the same is approved, stating in said warrant the amount, purposes, and reasons for which the same is drawn. If said claim shall amount to more than one thousand dollars, and is approved by said Board of Tax Appeals, the chairman, giving all the facts and circumstances in connection therewith, **shall report the same to the next session of the legislature for its consideration**. Provided that where such claim accrues to more than one person, as for example, the heirs or legatees of another, and the claim is determined by the board to be properly due and owing, payment thereof to the party or parties asserting the same before the board shall not be denied because of the failure or refusal of others to join in and assert such claim, but in such event only the portion due such claimant or claimants shall be paid and then only if the amount to be paid to each such claimant does not exceed one thousand dollars. [Emphasis added.]

[6] Concerning satisfaction of claims rendered in a claims against the state proceeding, La. R.S. 47:1484(A) provides:

6

procedures to authorize the return of overpaid taxes without requiring a legislative appropriation.

When a taxpayer utilizes the payment under protest procedure (the second remedy), the contested amount is to be escrowed "pending the outcome of the suit, the petition, or an appeal therefrom." See La. R.S. 47:1576(A)(2). In that type of proceeding, payment to a prevailing taxpayer is governed by La. R.S. 47:1576(A)(3), in which the legislature mandates that the refund of the taxpayer's money being held by the Secretary be made from the escrowed funds and "from funds derived from current collections of the tax to be refunded."[7]

Relative to the third remedy related to overpayment of refunds, as occurred in this matter, La. R.S. 47:1621, *et seq.*, set forth the procedure for refunding overpaid taxes. Overpayment is defined as a "payment of tax ... when none was due, [or] the excess of the amount of tax ... paid over the amount due." La. R.S. 47:1621(A). Unlike payments made under protest, these overpaid amounts are generally no longer in the possession or reach of the Secretary when the action for refund is filed.

_____

> At each regular session of the legislature, an amount **shall be appropriated**, … for the purpose of paying any and all claims that might be approved in accordance with the provisions of this Part, and which may be drawn against for the purpose of paying claims that might be duly approved by the Board of Tax Appeals. [Emphasis added.]

[7] La. R.S. 47:1576(A)(3) provides:

> If the taxpayer prevails, the secretary shall refund the amount to the claimant, with interest at the rate established pursuant to R.S. 13:4202(B) from the date the funds were received by the Department of Revenue or the due date, determined without regard to extensions, of the tax return, whichever is later, to the date of such refund. Payments of interest authorized by this Section shall be made from funds derived from current collections of the tax to be refunded.

To the extent that the taxpayer's total recovery exceeds the escrowed amount, for example, when interest is owed to the claimant, the legislature mandates that payment "be made from funds derived from current collections of the tax to be refunded." *Id.* This mandate is not tethered to a legislative appropriation.

Therefore, the legislature devised a method for satisfying the Secretary's obligation to refund overpaid taxes.

Where there has been a determination that an overpayment has been made, La. R.S. 47:1621(D)(1) directs that the refund of overpaid taxes "shall be made out of any current collections of the particular tax which was overpaid." The refund of overpayments that occurred in multiple years may be refunded "incrementally" by the Secretary; however, "[t]he number of increments shall not exceed the total number of years the tax was overpaid." La. R.S. 47:1621(D)(2). Within 45 days of the finality of a refund judgment in a Section 1621 proceeding, "the secretary shall make the refund." See La. R.S. 47:1621(D)(3). For incremental refunds, "[t]he first payment owed … shall be made within" 45 days of the judgment becoming final. La. R.S. 47:1621(D)(3) and(4).

By enacting legislation to provide for "a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer,"[8] the legislature has expressly provided for the procedures in suits against the state, a state agency, and a political subdivision and the effects of a judgment against them[9] in the three types of tax proceedings identified above. To be valid, such legislation must comport with due process, equal protection, and the other constitutional guarantees. See **Chamberlain v. State, Dept. of Transp. and Development**, 624 So.2d 874, 883 (La. 1993) (citing Lee Hargrave, *"Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974*, 43 La. L. Rev. 647, 655-56 (1983)).

---

[8]  See La. Const. art. VII, § 3(A).

[9]  See La. Const. art. XII, § 10(C) (quoted *supra* n.4).

This case proceeded as a claim for refund of overpaid taxes under La. R.S. 47:1621.[10] As previously indicated, the refund judgment in this case is final. Accordingly, the Secretary is statutorily required to "promptly … make the refund" of Jazz's overpayments. See La. R.S. 47:1437(B). Such refund by the Secretary shall take place or commence within 45 days of the judgment becoming final. See La. R.S. 47:1621(D)(3) & (4). The Secretary's duties under these statutes are ministerial, as the Secretary is not afforded any discretion relative to the return of taxes (determined to have been overpaid) to a taxpayer in the overpayment refund process.[11] See **Hoag**, 04-0857 at 7, 889 So.2d at 1024.

Tax laws enacted by the legislature to satisfy the requirements of La. Const. art. VII, § 3(A) make the refund of overpaid taxes under La. R.S. 47:1621 mandatory. See **Tin, Inc. v. Washington Parish Sheriff's Office**, 12-2056, pp. 17-18 (La. 3/19/13), 112 So.3d 197, 209 (citing La. R.S. 47:1621(A)) ("The applicable statutes set out the circumstances under which the tax collector must refund the taxpayer for the overpayment of taxes."). In this respect, this statutory scheme is similar to the laws governing the expropriation of private property for public purposes. "The power of expropriation or eminent domain is the right of the State or its subdivisions to

---

[10] Although the statutory scheme for overpayment refunds provides for the potential for the Secretary to ascribe a credit against the taxpayer's other tax liabilities, the parties have not raised or argued this issues and, instead, focus on the refund provisions in La. R.S. 47:1621. See La. R.S. 47:1622(A) ("Before refunding any overpayment, the secretary may first determine whether the taxpayer who made the overpayment owes any other liability under any law administered by him. If such be the case, the secretary may credit the overpayment against such liability and notify the taxpayer of the action taken.").

[11] Furthermore, the legislature has retained the power to oversee the refund process by requiring "[t]he secretary [to] report quarterly to the Joint Legislative Committee on the Budget the total amount of refunds made each quarter and [to] specifically note when any refunds were not paid within the time period provided for in Paragraph (D)(3) of this Section and the reason therefor." La. R.S. 47:1621(H). The enactment of such a reporting requirement supports a finding that the legislature did not intend that the refund of taxes erroneously paid to the Department be conditioned on a legislative appropriation. There would be no need for such a reporting requirement if a legislative appropriation is required.

appropriate private property for public purposes, and is inherent in police power of state." **Parish of St. Charles v. R.H. Creager, Inc.**, 10-180, p. 10 (La.App. 5 Cir. 12/14/10), 55 So.3d 884, 891. The constitutional provisions that afford a public body the right "to exercise its police power compels the public body to pay just and fair compensation and to afford constitutional due process rights to citizens affected." *Id.* (citing, *inter alia*, La. Const. art. I, §§ 2 and 4(B)).

As urged by the Department, La. Const. art. XII, § 10(C) and La. R.S. 13:5109(B)(2) require an appropriation of funds by the legislature or the political subdivision against which a judgment was rendered to make a judgment "exigible" or "payable."[12] Accordingly, in the context of tort or contract-based claims,[13] courts have held that a judgment creditor of the state, a state agency, or a political subdivision can only collect on a judgment by obtaining an appropriation of funds by the legislature.[14] See **Hoag**, 04-0857 at 5, 889 So.2d at 1023. However, the mandatory nature of the overpayment refund, like the compensation that is required

---

[12] "No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." La. Const. art. XII, § 10(C).

Pursuant to La. Const. art. XII, § 10(C), the legislature passed La. R.S. 13:5109(B)(2), which provides:

> Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of **funds appropriated** for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision. [Emphasis added.]

[13] Suits against the state are governed by La. Const. art. XII, § 10, which waives state immunity from suit in contract and tort. See La. Const. art. XII, §10(A). This constitutional provision also empowers the legislature to waive immunity in other instances by "authoriz[ing] other suits against the state, a state agency, or a political subdivision." La. Const. art. XII, § 10(B).

[14] See **Vogt v. Board of Com'rs of Orleans Levee Dist.**, 01-0089, p. 8 (La.App. 4 Cir. 3/27/02), 814 So.2d 648, 654 (citing **Baudoin v. Acadia Parish Police Jury**, 96-1288, pp. 5-6 (La.App. 3 Cir. 9/17/97), 702 So.2d 715, 718, and **Foreman v. Vermilion Parish Police Jury**, 336 So.2d 986 (La.App. 3 Cir. 1976).

in expropriation cases,[15] distinguishes an overpayment refund proceeding under La.

R.S. 47:1621, *et seq.*, from cases requiring a legislative appropriation for payment of

a judgment, *i.e.*, matters arising out of contract or tort.[16]  In exercising the legislative

authority to "determine when and how to pay" a judgment against the state, a state

agency, or political subdivision[17] and to provide "a complete and adequate remedy for

the prompt recovery of an illegal tax paid by a taxpayer,"[18] the legislature made the

refund of tax overpayments mandatory.  Accordingly, the legislature afforded the

judiciary authority to issue a mandamus in a proceeding under La. R.S. 47:1621, *et

seq.*, to compel enforcement of a final refund judgment.[19, 20]  In La. R.S. 47:1437(C),[21]

---

[15]  See **Parish of St. Charles**, 10-180 at 11, 55 So.3d at 891.

[16]  The appropriation of funds by a public body is discretionary and not ministerial.  **Vogt**, 01-0089 at 8, 814 So.2d at 654 (citing **De Laureal Engineers, Inc. v. St. Charles Parish Police Jury**, 406 So.2d 770 (La.App. 4 Cir. 1981)).  Because appropriation is discretionary, mandamus will not lie to compel payment of a judgment by a state, a state agency, or political subdivision.  See *id.*

[17]  See **Chamberlain**, 624 So.2d at 882 (citing **Hargrave**, 43 La. L. Rev. at 654).

[18]  See La. Const. art. VII, § 3(A).

[19]  See **Parish of St. Charles**, 10-180 at 13, 55 So.3d at 892 ("the judiciary has the constitutional authority to issue a mandamus in [an expropriation] matter [to compel payment of a final judgment] if warranted.").  For another example in which mandamus was authorized, see **Felix v. St. Paul Fire and Marine Ins. Co.**, 477 So.2d 676, 678-82 (La. 1985) (a medical malpractice action in which this court found that a writ of mandamus was appropriate to compel the insurance commissioner to perform duties imposed by a statute that requires submission of a claim to the state treasurer on receipt of a certified copy of final judgment in excess of $100,000 for purposed of enforcement against the Patient's Compensation Fund.  The commissioner's statutory duties were found to be "purely ministerial.").

[20]  This decision neither modifies nor erodes in any way the prior decisions of this court that require a legislative appropriation to fund a judgment in matters related to tort or contract.

[21]  La. R.S. 47:1437(C) provides:

> In addition to the remedies provided for in this Section, or in any other applicable law, a final decision or judgment of the board may also be enforced in any manner provided by law for a final judgment of a district court.  A **writ of mandamus** may also be issued to enforce provisions of Subsection B of this Section relating to final judgments.  [Emphasis added.]

La. R.S. 47:1437(C) was recently added by the legislature to clarify the enforcement remedies in an overpayment refund proceeding.  See 2016 La. Act 335, §§ 1 & 3, effective June 12, 2014.  In pertinent part, Section 3 of Act 335 provides:

the legislature expressly authorizes the use of mandamus relief to compel the Secretary to "promptly … make the refund." When a writ of mandamus is specifically provided as a remedy by statute, the general rules for a mandamus action do not apply; therefore, the petitioner is not required to show that relief is not available by ordinary means or that the delay involved in obtaining ordinary relief may cause injustice, as required by La. C.C.P. art. 3862. See **Wallace C. Drennan, Inc. v. St. Charles Parish**, 14-89, pp. 5-6 (La.App. 5 Cir. 8/28/14), 164 So.3d 186, 190; **Quality Design and Const., Inc. v. City of Gonzales**, 13-0752, pp. 6-7 (La.App. 1 Cir. 3/11/14), 146 So.3d 567, 572. Accordingly, mandamus is an appropriate remedy to compel the Secretary to the perform duties owed under La. R.S. 47:1621.

Because a claim for a refund of overpaid taxes involves the return of money belonging to the taxpayer that is being held by the Department, a proceeding under La. R.S. 47:1621, like an expropriation proceeding, implicates constitutional concerns involving the deprivation of property. Even assuming that the "current collections of the particular tax which was overpaid"[22] actually used in the refund process are public funds, the issuance of a writ of mandamus ordering the Secretary to use those funds does not violate the constitutional prohibition of seizing public funds.[23] The state legislature has specifically authorized the procedure in La. R.S. 47:1621(D) to provide for the satisfaction of a final judgment against the Secretary to effect the

---

The provisions of this Act amending R.S. … [47:]1437 are procedural and interpretative and shall be effective on the effective date of Act No. 640 of the 2014 Regular Session of the Legislature [eff. June 12, 2014][.]

[22] See La. R.S. 47:1621(D)(1).

[23] See La. Const. art. XII, § 10(C) ("no public property or public funds shall be subject to seizure"). Section 10(C) "is aimed at protecting the public fisc and seeks to avoid governmental priorities being upset by the payment of substantial money judgments." **Chamberlain**, 624 So.2d at 883 (quoting **Hargrave**, 43 La. L. Rev. at 655).

return of money belonging to the taxpayer. Hence, the constitutional mandates applicable in this case would be satisfied even if the "current collections" are public funds. To hold otherwise would allow the Secretary to disregard mandatory obligations under La. Const. art. VII, § 3(A) and La. R.S. 47:1621, under the guise that a court-issued mandamus ordering such refund violates the separation of powers doctrine. Such a result would render meaningless the constitutional guarantee under La. Const. art. VII, § 3(A) of "a complete and adequate remedy for the prompt recover of an illegal tax paid by a taxpayer," as well as the statutory scheme authorizing the recovery of overpaid taxes rightfully belonging to the taxpayer and the legislatively mandated mechanism for enforcing a final judgment that authorizing the refund of overpaid taxes.

## CONCLUSION

Jazz is not attempting to enforce a judgment against a public body that arose in tort or contract. Ultimately, at the heart of this dispute is whether the legislature must appropriate funds to satisfy Jazz's tax refund judgment. A distinguishing characteristic of the funds sought by Jazz is that these funds belong to Jazz; whereas, with a judgment in a tort or contract matter, the judgment creditor is attempting to collect funds the public body legally collected which have become public funds. Although collected from Jazz by the Secretary and held by the Stadium District and Hall Authority according to the Board's now-final judgment, the Secretary and these entities were without legal authority to collect these taxes. To fulfill its constitutional duty,[24] the legislature provided a statutory scheme authorizing a refund to the taxpayer of what are in effect the taxpayer's funds.

---

[24] See La. Const. art. VII, § 3(A).

Jazz's refund judgment arose from an overpayment of $1,983,315.27 in hotel occupancy taxes over several tax years, which is expressly governed by La. Const. art. VII, § 3; La. R.S. 47:1621; and La. R.S. 47:1437(B) and (C), in addition to La. Const. art. XII, § 10. Section 1621 mandates the use of current collections of the hotel occupancy taxes for the Stadium District and Hall Authority to satisfy of Jazz's refund judgment. The Secretary's duty under La. R.S. 47:1621 to refund overpaid taxes is ministerial. The legislature has expressly authorized the use of a writ of mandamus to compel the Secretary to fulfill the duties imposed by La. R.S. 47:1437(B) and 47:1621. See La. R.S. 47:1437(C). Therefore, the district court was within its constitutional and statutory authority to issue a writ of mandamus to the Secretary to compel compliance with the refund judgment.

## DECREE

For the foregoing reasons, the decision of the appellate court is reversed, and the judgment of the district court is reinstated to the extent that it compels the Secretary of the Louisiana Department of Revenue to refund the amounts that Jazz overpaid in hotel occupancy taxes to the Louisiana Stadium and Exposition District and the New Orleans Exhibition Hall Authority, together with applicable interest, pursuant to La. R.S. 47:1621(D) and in accordance with this opinion.

**REVERSED; TRIAL COURT JUDGMENT REINSTATED.**

SUPREME COURT OF LOUISIANA

No. 2016-C-1663

JAZZ CASINO COMPANY, L.L.C.

VERSUS

CYNTHIA BRIDGES, SECRETARY,
LOUISIANA DEPARTMENT OF REVENUE

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

JOHNSON, Chief Justice, concurs in the result.