STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-633


STEVE CROOKS, ET AL.

VERSUS

STATE OF LOUISIANA THROUGH THE

DEPARTMENT OF NATURAL RESOURCES


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 224,262
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. LARRY VIDRINE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Jonathan W. Perry, and J. Larry Vidrine\*,
Judges.


**AFFIRMED, IN PART, REVERSED,**
**IN PART AND RENDERED.**

**Perry, J., concurs in part, dissents in part, and assigns reasons.**


_____


\*Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana
Supreme Court as Judge Pro Tempore.

**Scott Johnson**
**Louisiana Division of Administration**
**1200 North Third Street**
**Baton Rouge, LA 70802**
**(225) 326-6085**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **State of Louisiana Through the Department of Natural Resources**

**Richard Traina**
**Steeg Law Firm**
**201 St. Charles Avenue, Suite 3201**
**New Orleans, LA 70170**
**(504) 582-1199**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **State of Louisiana Through the Department of Natural Resources**

**Machelle R.L. Hall**
**Ryan M. Seidemann, Ph.D.**
**Morgan D. Rogers**
**Ryan S. Montegut**
**Louisiana Department of Justice**
**P.O. Box 94005**
**Baton Rouge, LA  70804-9005**
**(225) 326-6000**
**COUNSEL FOR DEFENDANT/APPELLEE**
 **State of Louisiana Through the Department of Natural Resources**

**William H. Caldwell**
**Ferdinand P. Leonards**
**Dale R. Baringer**
**Baringer Law Firm**
**201 St. Charles Street**
**Baton Rouge, LA 70802**
**(225) 383-9953**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Foster Investment Corporation**

**Jimmy R. Faircloth, Jr.**
**Mary Katherine Price**
**Faircloth Melton, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Justiss Oil Company, Inc.**

**Kevin E. Huddell**
**Emma Daschbach**
**Gladstone Jones**
**Bernard Boudreaux, Jr.**
**John Arnold**
**Lindsay Reeves**
**Christopher Swanson**
**601 Poydras Street, Suite 2655**
**New Orleans, LA  70130**
**(504) 523-2500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Catahoula Lake Investments LLC, et al.**

**Robert Baldwin**
**G. Adam Cossey**
**Hudson, Potts & Bernstein**
**Post Office Drawer 3008**
**Monroe, LA 71210-3008**
**(318) 388-4400**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Era Lee Crooks**
  **Steve Crooks**

**James J. Davidson, III**
**Christopher J. Piasecki**
**Davidson, Meaux, Sonnier, McElliott, Fontenot, Gideon & Edwards**
**P.O. Box 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Era Lee Crooks**
  **Steve Crooks**

**J. Michael Veron**
**Turner D. Brumby**
**Veron, Bice, Palermo & Wilson, LLC**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Era Lee Crooks**
  **Steve Crooks**

**Charles S. Weems III**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**

**Era Lee Crooks**
**Steve Crooks**

**V. Russell Purvis**
**Smith, Taliaferro & Purvis**
**P.O. Box 298**
**Jonesville, LA 71343**
**(318) 339-8526**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Era Lee Crooks**
**Steve Crooks**

**James L. Carroll**
**Attorney at Law**
**107 Riser Street**
**Columbia, LA 71418**
**(318) 649-9284**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Era Lee Crooks**
**Steve Crooks**

**VIDRINE, Judge Pro Tempore.**

This is a case where plaintiff landowners brought a class action against the State of Louisiana, Department of Natural Resources, seeking declaration that they owned riparian property, injunctive relief, and damages for increased flooding across the property. A key determination in this case is whether the body of water is defined as a river or lake. The trial court entered judgment that the body of water is properly classified as a river, declared landowners to be the legal owners of the area at issue, and awarded damages and attorney fees to landowners. After exhausting the appeals process, this judgment is final.

Thereafter, the State has failed to pay damages or attorney's fees as ordered by the resulting judgment. The landowners filed for a writ of mandamus to compel payment of the judgment and attorney's fees. Further, the landowners sought sanctions against the State for deliberate refusal to comply with the terms of the final judgment. The trial court denied the landowners' writ and request for sanctions. The landowners appeal and request attorney's fees for the work performed at the trial level regarding the writ and attorney's fees for work done on appeal.

**FACTS AND PROCEDURAL HISTORY:**

This case has been before this court on multiple occasions. Previously, in *Crooks v. Dep't of Nat. Res.*, 17-750, pp. 1-4 (La.App. 3 Cir. 12/28/18), 263 So.3d 540, 544-46, *aff'd in part, rev'd in part*, 19-160 (La. 1/29/20), __ So.3d ___, (alterations in original)(footnotes omitted), this court iterated the following regarding the facts and procedural history of this matter:

> In 1962, the United States began constructing various structures in and around the Catahoula Basin pursuant to a congressionally-authorized navigation project under the River and Harbor Act of 1960 to promote navigation on the Ouachita and Black Rivers. In association with the project, the State of Louisiana and the United States signed an "Act of Assurances." Under the Act of Assurances, the State agreed to:

a. Furnish free of cost to the United States all lands, easements, and rights of way, including flowage rights in overflow areas, and suitable spoil-disposal areas necessary for construction of the project and for its subsequent maintenance, when and as required;

. . . .

c. Hold and save the United States free from damages due to construction and maintenance of the project[.]

In connection with the project, the Catahoula Lake Water Level Management Agreement (hereinafter called the Water Level Management Agreement) was also developed and signed by the United States Army Corps of Engineers; the Bureau of Sport Fisheries and Wildlife, Fish and Wildlife Service, United States Department of the Interior; and the Louisiana Wildlife and Fisheries Commission. The agencies confected the agreement to ensure that proper water level management would protect the wildlife and public recreational opportunities in the Catahoula Basin, including an area known as Catahoula Lake. Upon completion of the project in 1972, the record indicates that the United States Fish and Wildlife Service began managing water levels in and around the Catahoula Basin in accordance with a seasonal schedule outlined in the agreement. As intended, these water management activities increased water levels in the Catahoula Basin and prolonged the natural annual high-water fluctuations. The record indicates that the United States Fish and Wildlife Service continues to manage the water levels in the Catahoula Basin to this day. Further, the record indicates that the State exercises jurisdiction of the Louisiana Department of Wildlife and Fisheries and has granted mineral leases in the area known as Catahoula Lake.

On May 4, 2006, Steve Crooks and Era Lea Crooks filed a "Class Action Petition To Fix Boundary, For Damages And For Declaration Judgment." They alleged to be representatives of a class of landowners in the Catahoula Basin whose property is affected by the increased water levels from the project. The trial court ultimately certified the Plaintiffs as one class (hereinafter collectively referred to as "Plaintiffs"). However, the trial court ascertained that the resolution of some members' claims would require determining ownership of certain lands. Accordingly, the trial court subdivided the Plaintiff class into two distinct groups depending upon the locations of their properties. The trial court referred to the groups as the "Lake Plaintiffs" and the "Swamp Plaintiffs" and summarized their claims as follows:

The Lake Plaintiffs are seeking to have all lands between the ordinary low and ordinary high water mark of the Little River within the area known as Catahoula Lake to be declared owned by the class in accordance with Louisiana's laws of riparian ownership. . . . The Lake

2

Plaintiffs have asserted additional claims seeking[:] a declaration that their lands have been unlawfully expropriated, without compensation, due to the significant obstructions to the natural drainage in and around the Catahoula Basin caused by the [project]; damages for the unlawful taking of their land because of this inverse condemnation; and to recover the mineral royalty and other payments derived from oil, gas, and mineral activities and productions received by the State of Louisiana from the immovable property that is the subject of these proceedings.

Separate and independent from the above, the Swamp Plaintiffs consists [sic] of the owners of "overflow lands" located in the southwestern portion of the Catahoula Basin. Much of the land bordering and lying outside Catahoula Lake was selected and approved as swampland and transferred to the state by the United States Government under the Swampland Acts of 1849 and 1850. It is not disputed that these lands are below an elevation of 36 feet mean sea level, and that their titles originated from patents issued by the [S]tate. Because of the State's acknowledgment that these plaintiffs' ownership is not disputed, the only remaining issues with respect to these owners is whether the overflow lands have been unlawfully expropriated and, if so, the amount of damages necessary to compensate these plaintiffs for the unlawful taking of their land without compensation.

The Lake Plaintiffs argued that, though referred to as a lake, the area known as Catahoula Lake actually constitutes the banks of a body of water in the Catahoula Basin called Little River and thus is owned by the Lake Plaintiffs in accordance with Louisiana's laws of riparian ownership. They asserted that, prior to construction of the project and management of the water levels in the Catahoula Basin, Little River crossed the Catahoula Basin and seasonally overflowed its banks. They argued that, during overflow periods, Little River expanded across the entire Catahoula Basin and was mistakenly called Catahoula Lake. Thus, as detailed in the above quote, the Lake Plaintiffs sought to be declared owners of the area between the ordinary low water mark and the ordinary high water mark of Little River.

After a trial and extensive appeals, a final judgment was eventually reached wherein, inter alia, the body of water was found to be a river, and the State was ordered to pay Plaintiffs royalties mistakenly paid to it for the minerals removed from the Plaintiffs' land as well as attorney's fees. Thereafter, Plaintiffs filed a writ of mandamus to compel the State to pay the royalties to them, sought sanctions for

3

contempt of court for the State's failure to pay those royalties, and asked for attorney's fees for work done in seeking the writ of mandamus. The trial court denied Plaintiffs' writ and other requests. Plaintiffs appeal assigning four errors.

## ASSIGNMENTS OF ERROR:

1. The trial court erred as a matter of law when it refused to issue a writ of mandamus to compel the State to comply with the final judgment.

2. The trial court erred as a matter of law when it refused to impose sanctions for the State's deliberate failure to obey the final judgment.

3. The trial court erred as a matter of law when it refused to apply *res judicata* to bar any change in the terms of the final judgment.

4. In addition to issuing a writ of mandamus, the trial court should have awarded plaintiff class its attorney's fee.

## JURISDICTION:

Prior to addressing any assignments of error, we must first address the argument made by the State that this court does not have jurisdiction over this case. The State argues that the June 17, 2021 judgment was not designated as final and the motion filed by Plaintiffs was interlocutory in nature. According to the State, this court has the power to either convert Plaintiffs' appeal to a writ or to dismiss the appeal as improper. We disagree.

The denial of a request for a writ of mandamus is an appealable judgment. *Coxe Prop. Mgt. & Leasing v. City of New Orleans*, 19-911 (La.App. 4 Cir. 4/8/20), 294 So.3d 1098; *Const. Diva, LLC v. New Orleans Aviation Bd.*, 16-566 (La.App 4 Cir. 12/14/16), 206 So.3d 1029, *writ denied*, 17-83 (La. 2/24/17), 216 So.3d 59; *Delano Plantation v. Lowrey*, 08-1180 (La.App. 3 Cir. 3/4/09), 10 So.3d 260. At issue here is a denied writ of mandamus. Thus, the State's argument regarding jurisdiction is without merit.

4

Further, the State argues that the trial court did not properly have jurisdiction over Plaintiffs' mandamus action because a writ of mandamus is a summary proceeding and should not have been raised in a motion within an ordinary proceeding. The State argues that "the writ of mandamus was improperly cumulated in this action[,] and the trial court erred in hearing the mandamus action as a motion within an ordinary action."

The State's argument addresses improper cumulation of actions. Louisiana Code of Civil Procedure Article 461 defines cumulation of actions as "the joinder of separate actions in the same judicial demand, whether by a single plaintiff against a single defendant, or by one or more plaintiffs against one or more defendants." This definition does not apply to the case before us. Therefore, the State's argument regarding improper cumulation is without merit.

However, the basis for the State's argument is that Plaintiffs did not use the proper form of procedure, i.e., unauthorized use of summary proceeding, a dilatory exception listed at La.Code Civ.P. art. 926(A)(3). Louisiana Code of Civil Procedure Article 926(B) states, "All objections which may be raised through the dilatory exception [including unauthorized use of summary proceeding,] are waived unless pleaded therein." Here, the State failed to plead the dilatory exception. Thus, any objection by the State for unauthorized use of summary proceeding in Plaintiffs seeking a writ of mandamus has been waived.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Plaintiffs' first assignment of error is the trial court erred in refusing to issue a writ of mandamus to compel the State to comply with the final judgment in this case. We find merit to this assigned error.

"Mandamus is a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864." La.Code Civ.P. art. 3861.

> A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice; provided, however, that no court shall issue or cause to be issued a writ of mandamus to compel the expenditure of state funds by any state department, board or agency, or any officer, administrator or head thereof, or any officer of the state of Louisiana, in any suit or action involving the expenditure of public funds under any statute or law of this state, when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.

La.Code Civ.P.art. 3862.

"A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor." La.Code Civ.P. art. 3863.

"[A] district court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review." *St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co., Inc.*, 16-907, p. 4 (La. App. 4 Cir. 4/5/17), 220 So.3d 6, 10, *writ denied*, 17-746 (L. 9/15/17), 225 So.3d 1088. However, when "statutory interpretation is at issue and since the correct interpretation of a statute is naturally a question of law" appellate courts apply a de novo standard of review. *Town of Sterlington v. Greater Ouachita Water Co.*, 52,482, p. 12 (La.App. 2 Cir. 4/10/19), 268 So.3d 1257, 1265, *writs denied*, 19-717, 19-913 (La. 9/24/19), 279 So.3d 386.

In the case before us, the trial court denied Plaintiffs' writ of mandamus based upon its finding that La.Const.art 12, §10 and La.R.S. 13:5109(B) applied. Plaintiffs

argue that the trial court incorrectly applied La.Const.art 12, §10 and La.R.S. 13:5109(B) to this matter. As such, a de novo review of this argument is appropriate.

Louisiana Constitution Article 12, § 10 states:

(A) **No Immunity in Contract and Tort.** Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.

(B) **Waiver in Other Suits.** The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.

(C) **Limitations; Procedure; Judgments.** Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.

Louisiana Revised Statutes 13:5109(B) states:

(1) If a judgment is rendered by a trial or appellate court or the supreme court against the state or a state agency in the amount of five hundred thousand dollars or more, and the attorney general is not an attorney of record in the suit, the clerk of the court shall also mail a notice of judgment to the attorney general, through the chief of the civil division, in accordance with Code of Civil Procedure Articles 1913, 2166, or 2167, as appropriate.

(2) Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.

Plaintiffs argue that the trial court's judgment denying its writ of mandamus based on La.Const.art. XII, §10 and La.R.S. 13:5109(B) was in error. Plaintiffs point

7

out that our supreme court, in *Jazz Casino Co., LLC v. Bridges*, 16-1663 (La. 5/3/17), 223 So.3d 488, approved the issuance of a writ of mandamus to compel the State, through the Department of Revenue, to comply with a judgment granting a taxpayer a refund for hotel occupancy taxes that were overpaid. Plaintiffs note the following language used by our supreme court in *Jazz Casino* and its specific rejection of the reasoning for the trial court's judgment here:

> Ultimately, at the heart of this dispute is whether the legislature must appropriate funds to satisfy Jazz's tax refund judgment. A distinguishing characteristic of the funds sought by Jazz is that these funds belong to Jazz; whereas, with a judgment in a tort or contract matter, the judgment creditor is attempting to collect funds the public body legally collected which have become public funds.

*Jazz Casino Co., LLC*, 223 So.3d at 497.

Here, like in *Jazz Casino*, at the heart of the dispute is whether Plaintiffs must seek legislative appropriation of funds to satisfy their judgment against the State. Like the situation in *Jazz Casino*, these funds sought by Plaintiffs were found to belong to Plaintiffs and not the State because the judgment Plaintiffs sought to enforce via the writ for mandamus declares them to be the rightful owners of property and all mineral royalties produced from that property. Thus, we find that the mineral royalties belonging to Plaintiffs were not legally within the possession of the State and, as such, are not public funds. Accordingly, we find that the trial court erred in denying Plaintiffs' writ of mandamus based upon La.Const.art XII, §10 and La.R.S. 13:5109(B) given the reasoning of our supreme court in *Jazz Casino Co., LLC*, 223 So.3d 488.

The State argues that *Jazz Casino* can be distinguished from this matter because there are state statutes that expressly authorized the use of mandamus to compel a public officer to perform a ministerial duty. However, our supreme court

8

specifically addressed this argument in *Lowther v. Town of Bastrop*, 20-1231 (La. 5/13/21), 320 So.3d 369, 374 n.6 when it stated:

> The absence of an express authorization for use of mandamus in these provisions does not preclude it, rather, at trial, the Firefighters would be "required to show that relief is not available by ordinary means or that the delay involved in obtaining ordinary relief may cause injustice as required by La. C.C.P. art. 3862." *Jazz Casino*, 16-1663, p. 12, 223 So.3d at 496-97.

Here, Plaintiffs, like the Firefighters in *Lowther*, are required to show that ordinary means are not available to enforce the judgment. Clearly, Plaintiffs cannot enforce the judgment by ordinary means. The State's property cannot be seized and sold to satisfy the judgment. Accordingly, given the directive by our supreme court in *Lowther*, we grant Plaintiffs' writ of mandamus.

## ASSIGNMENT OF ERROR NUMBER TWO:

Plaintiffs' second assignment of error is the trial court erred in refusing to impose sanctions for the State's deliberate failure to obey the final judgment in this case. We find no merit to this assignment of error.

Our supreme court, in *Peterson v. Gibralter Sav. and Loan, Inc.*, 98-1601, pp. 2-3 (La. 9/3/99), 751 So.2d 820, 822, addressed imposition of sanctions by a court, including appellate standard of review, stating:

> The United States Supreme Court has recognized that, upon their creation, courts are universally acknowledged to be vested with the power to impose silence, respect, decorum, and submission to their lawful mandates. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (citing *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821)). These inherent powers are not governed by rules or statutes, but by control necessarily vested in courts to manage their own affairs and to achieve the orderly and prompt disposition of cases. *Id.* (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962)). This power, while incidental to all courts, must always be exercised with "great caution." *Id.*

> In *Chambers*, the Court acknowledged that the power to punish for contempt is inherent in all courts. Such power reaches to both conduct before the court and conduct outside the court's presence. *Id.*

9

at 44, 111 S.Ct. at 2132. Invocation of a court's inherent power automatically requires a finding of bad faith and the court must comply with the mandates of due process. *Id*. at 49, 50, 111 S.Ct. at 2135, 2136. A court's imposition of sanctions under its inherent power is reviewed for abuse of discretion. *Id*. at 55, 111 S.Ct. at 2138.

Plaintiffs assert that the State's conduct constitutes contempt of court. Review of the trial court's determination as to whether behavior rises to the level of contempt is subject to a manifest error standard of review. *McCorvey v. McCorvey*, 05-1173 (La.App. 3 Cir. 4/5/06), 926 So.2d 114, *writ denied*, 06-959 (La. 6/16/06), 929 So.2d 1290.

Louisiana Code of Civil Procedure Article 221 defines contempt of court as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive [.]" "A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La.Code Civ.P. art. 222. Constructive contempt is "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." La.Code Civ.P. art. 224(2). Constructive contempt "must be based on a finding that the accused violated an order of the court 'intentionally, knowingly, and purposefully, without justifiable excuse.'" *Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (quoting *Brunet v. Magnolia Quarterboats, Inc.*, 97-187, p. 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313, *writ denied*, 90-990 (La. 5/29/98), 720 So.2d 343.)

Here, the trial court refused to impose sanctions against the State based on its erroneous finding that the State could not comply with the underlying judgment without first getting approval from our legislature. As such, the trial court found no basis for imposing sanctions against the State. While there is vast discretion afforded

10

a trial court in such matters, none is given when the underlying judgment is reversed as we did in assignment of error number one and that judgment is the basis for the trial court's denial of requested sanctions for contempt of court. However, given that the State had a rational argument for its failure to pay Plaintiffs, its stated excuse for its failure to comply with the final judgment, we find that the State does have a justifiable excuse for its actions. Therefore, we find no error in the trial court's ruling denying sanctions for contempt of court on this matter.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Third, Plaintiffs assert that the trial court erred in failing to apply *res judicata* to bar any change in the terms of the final judgment in this case. Our finding in Assignment of Error Number One that grants Plaintiffs' writ of mandamus compelling the State to comply with the final judgment in this case renders any alleged changes in the terms of the final judgment moot.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

Finally, Plaintiffs allege the trial court erred in failing to award their attorney's fees for work performed in obtaining a writ of mandamus and for work done on appeal. We find merit to this assignment of error.

We have already found merit in Plaintiffs' claim that they are entitled to a writ of mandamus compelling the State to comply with the final judgment reached in this case. Per that final judgment, Plaintiffs' were awarded attorney's fees. Accordingly, we render Plaintiff a writ of mandamus to compel the State to pay their attorney's fees.

Generally, Louisiana only allows for an award of attorney's fees provided for in contract or authorized by statute. *Langley v. Petro Star Corp. of La.*, 01-198 (La. 6/29/01), 792 So.2d 721. Here, La.Code Civ.P.art 595 authorizes an award of

attorney's fees in a class action. In the final judgment, Plaintiffs were awarded attorney's fees.

Given the time and labor performed by Plaintiffs and the complexity of the matter in seeking a writ of mandamus, we award Plaintiffs **$20,000.00** in attorney's fees for work done at the trial level. Further, Plaintiffs request attorney's fees for work done on appeal. We grant this request. Courts have consistently held that protection of a judgment on an appellate level that includes an award of attorney's fees is a basis to, once again, award attorney's fees for work done to protect that judgment. *Wilczewski v. Brookshire Grocery Store*, 08-718 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170. Given this line of reasoning, we award Plaintiffs' **$10,000.00** for work done on appeal.

**CONCLUSION:**

Plaintiffs in this matter raise four assignments of error. We find merit in the first and fourth assignments. As such, we reverse the trial court's denial of Plaintiffs' writ of mandamus. Further, we award Plaintiffs **$20,000.00** for work done at the trial level and **$10,000.00** for work done on the appellate level. We assess all costs of this appeal to the State in the amount of $3,323.25.

**AFFIRMED, IN PART, REVERSED, IN PART AND RENDERED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT


**21-633**

**STEVE CROOKS, ET AL.**

**VERSUS**

**STATE OF LOUISIANA THROUGH THE
DEPARTMENT OF NATURAL RESOURCES**


**PERRY, Judge,** concurring in part and dissenting in part.

I would award attorney fees of $10,000.00 for work in the trial court and $5,000.00 for work on the appeal. In all other respects, I agree with the majority opinion.