870 So.2d 1126 (2004)
Willie J. YOUNG, Sr., et al, Plaintiffs-Appellees,
v.
Patricia SANDERS, Defendant-Appellant.
No. 38,412-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
Charles C. Foti, Jr., Attorney General, Angie R. LaPlace, Frances Pitman, Roy A. Mongrue, Jr., Assistant Attorneys General, for Appellant Louisiana Dept. of Justice.
Larry English, Shreveport, for Appellees Willie J. Young, Sr., Lurry Crew, Maxine Wilson, Leamon Cheatham, Linda K. Robinson and Vanessia A. Thompson.
*1127 Before STEWART, DREW and MOORE, JJ.
STEWART, J.
This appeal arises from an attempt to recall Huey P. Dean, Mayor of the Town of Homer, Louisiana, pursuant to La. R.S. 18:1300.1 et seq. Patricia Sanders, the Registrar of Voters for Claiborne Parish, disqualified certain names from the recall petition on the grounds that they were either written in print or did not look like the names on the voter registration cards. The plaintiffs, signers of the recall petition, sought a writ of mandamus directing Sanders to certify the names that she had disqualified. After a hearing, the trial court rendered a judgment ordering Sanders to return 66 names to the recall petition and to forward the petition of recall to the Governor. This appeal by the Attorney General of Louisiana followed. For the following reasons, we affirm the trial court's judgment.

FACTS
A recall petition aimed at recalling Huey Dean, Mayor of the Town of Homer, was presented to Sanders, the Registrar of Voters, for certification in accordance with La. R.S. 18:1300.1 et seq. Sanders disqualified 42 names from the recall petition because the names had been printed by hand on the signature block of the recall petition rather than signed in cursive. Sanders also disqualified a number of other names upon concluding that the signatures of the electors on the recall petition did not look like the signatures on their voter registration cards.
A group of voters who signed the recall petition, the plaintiffs herein, filed a petition for a writ of mandamus to compel Sanders to certify the names of the voters she had disqualified. We note that one of the plaintiffs was struck from the petition due to not having signed the recall petition. The matter came for a hearing before the trial court on September 11, 2003. The parties agreed that the two essential issues to be determined were whether Sanders was authorized to strike the signatures that were printed on the recall petition and whether she was authorized to strike the signatures which she believed did not match the signatures on the voter registration cards.
With regard to the first issue concerning the validity of printed names on the recall petition, the trial court noted the requirement that all signatures on the recall petition be handwritten as set forth in La. R.S. 1300.2(B) and concluded that this requirement encompassed printed signatures. As such, there were 42 printed names that had been improperly disqualified by Sanders. The trial court noted that in the absence of a statute prescribing the method of affixing one's signature, a signature may be affixed in different ways. The trial court further noted that the person subject to the recall suit could file suit and attempt to prove the printed signatures to be fraudulent or forged.
With regard to the second issue concerning signatures disqualified because Sanders believed they did not look like the signatures on the voter registration cards, the plaintiffs presented the testimony of Roberta Paschal, a notary public for Claiborne Parish. Paschal testified that she notarized 57 affidavits of individuals verifying the validity of their signatures on the recall petition. These affidavits were admitted into evidence, and of these affidavits, the court accepted 49 only. The court determined that 25 of those affidavits were by persons who had printed their signatures on the recall petition. This created an overlap between the number of affidavits accepted by the court and the signatures wrongly disqualified because they *1128 were printed. Therefore, a total of 66 names were found to have been improperly disqualified and were returned to the recall petition. Of the 66 names, 49 were verified by affidavit and 17 were printed names returned to the petition of recall without other verification.
Under La. R.S. 18:1300.2(B), the petition was required to be signed by a number of electors of the voting area "as will in number equal not less than thirty-three and one-third percent of the number of the total electors of the voting area wherein and for which a recall election is petitioned." In the instant case, the plaintiffs needed 61 signatures added back to the petition to have the required 331/3 percent. With 66 names added back to the petition, the required percentage was met, and the trial court ordered Sanders to forward to the governor the names of the qualified electors who signed the recall petition.

DISCUSSION
The Louisiana Attorney General raises four assignments of error on appeal. The first assignment of error challenges the trial court's finding that the registrar of voters had no authority to determine the validity of the signatures on the recall petition. The second and third assignments of error challenge the trial court's finding that the term "handwritten" includes printed signatures and the return of 17 printed names to the recall petition even though there was no other evidence validating the signatures. The fourth assignment of error challenges the grant of mandamus relief when the verification of signatures on the recall petition involves an exercise of the registrar of voter's discretion.
We begin our analysis with the fourth assignment of error. Under La. R.S. 18:1300.3(D), if the registrar of voters refuses to execute the certificate described in R.S. 18:1300.3(A), any signer of the recall petition, or a designated chairman or vice-chairman representing the signers, may utilize summary process to compel the registrar to execute the certificate. Moreover, under the provisions of La. C.C.P. art. 926, the unauthorized use of a summary proceeding is a dilatory exception that is waived unless pleaded. Here, there was no objection to the use of summary proceeding, nor was there any objection to the introduction of the affidavits verifying the signatures on the recall petition. Accordingly, under the facts established in this record, we find no merit in this assignment of error.
The issues raised by the three remaining assignments of error all broadly pertain to whether the registrar has authority to reject a person's handwritten signature because, in the registrar's estimation, it does not "reasonably compare" to the person's signature on the voter registration card. For the reasons which follow, we conclude that a registrar's duty in certifying the number of qualified electors whose handwritten signatures appear on the recall petition is limited to simply comparing the names on the recall petition to the names appearing on the registrar's record of electors. The registrar has neither the duty, nor the discretion, to compare a signature on a recall petition with a signature on a voter registration card and then strike the signature if, in the registrar's opinion, the signatures were not made by the same hand.
Because the recall election is a harsh remedy, the provisions which govern the recall process must be strictly construed. Cloud v. Dyess, 172 So.2d 528 (La.App. 3d Cir.1965). La. R.S. 1300.3(A) provides, in pertinent part, as follows:
A. The registrar of voters of each parish in the voting area wherein a recall *1129 election is sought shall certify on the recall petition, within fifteen working days after it is presented to him for that purpose, the number of names appearing thereon, the number of qualified electors of the voting area within the parish whose handwritten signatures appear on the petition, and also the total number of electors of the voting area within the parish as of the date of the filing of the petition with the secretary of state.
The registrar is also required to indicate names appearing on the petition of individuals who are not electors of the voting area. La. R.S. 18:1300.3(A).
In determining the number of qualified electors of the voting area who signed the petition, the registrar is directed by La. R.S. 18:1300.3(E) to comply with the provisions of La. R.S. 18:3(C). This provision states:
C. In determining the number of persons signing the petition who are electors in the voting area for the purpose of certifying the petition, the registrar shall not include any person who has not affixed to the petition his signature and the address at which he is registered to vote or any person who does not appear on the registrar's roll of electors. The signature of an elector shall include the surname under which the elector is registered to vote. The signature may include the elector's surname, first, and middle name, the initials of his surname, first, and middle name, or any combination thereof as the form in which his name appears on the petition, but shall not designate a title, designation, or deceptive name, nor shall it designate an occupational or professional description or abbreviation. However, the signature of a married woman may include her husband's surname, first, and middle name, the initials of his surname, first, and middle name, or any combination thereof, preceded by the title "Mrs." as the form in which her name appears on the petition, but only if she has registered under her husband's name preceded by the title "Mrs.".
La. R.S. 18:3(C).
The registrar of voters disqualified a number of signatures on the recall petition because they had been written in print. The Louisiana Election Code defines "signature" as "the name of a person which is signed," and this definition includes "the handwritten, electronic, or digitized name of an individual, except when the handwritten signature of the individual is specifically required." La. R.S. 18:2(7). Petitions submitted to a registrar of voters for certification are required to contain the "handwritten signature of the voter who is signing the petition." La. R.S. 18:3(A)(1). With regard to the signature affixed to a recall petition, La. R.S. 18:1300.4 provides only that "(N)o person may sign any name to a recall petition other than his own" and makes provisions for those who are incapacitated and unable to write. We find nothing in the relevant statutory provisions which would prohibit an elector from affixing his handwritten signature by printing it. Accordingly, we find no error in the trial court's determination that the 42 names printed on the recall petition had been improperly disqualified and must be returned to the recall petition for certification by the registrar of voters.
With regard to the registrar's striking of signatures on the recall petition because they did not look like the signatures on the voter registration cards, we note that the relevant statutory provisions do not provide a procedure for direct comparison of the signatures on the recall petition with the signatures on the voter registration cards to determine whether the signatures look alike or are written in *1130 the same hand or writing style. In complying with the provisions of La. R.S. 18:3(C), as quoted above, when determining the number of qualified electors in the voting area who signed the recall petition, the registrar's duty is limited to a comparison of the handwritten name of the voter with the name under which the voter has registered, not a comparison of the hand or writing style in which the name on the recall petition appears with that on the voter registration card.
Moreover, the recall remedy is statutorily designed for prompt action following circulation of a recall petition. Cloud v. Dyess, supra. In voting areas with less than 50,000 registered voters, the registrar has only 15 working days after being presented with a recall petition to certify the petition. La. R.S. 18:1300.3(A). This short time frame is hardly conducive with the onerous duty of comparing signatures on a recall petition with signatures on individual voter registration cards to determine whether the two signatures were written by the same hand. Had the legislature intended for the registrar to have the significant burden of rejecting signatures on a recall petition for their apparent failure to "reasonably compare" with signatures on voter registration cards, then the legislature would have provided a procedure for the registrar to challenge a signature, to send notice to the voter whose signature was questioned, and to provide the voter with an opportunity to verify the signature.[1] Although no such procedure has been enacted, the legislature has provided the means by which a public officer subject to recall may challenge the recall on the basis of fraud or other illegality.
Under the provisions of La. R.S. 18:1300.3(C), a copy of the recall petition, once certified, shall be retained in the office of the registrar of voters in each parish affected by the petition and shall be a public record. Furthermore, under the provisions of La. R.S. 18:1300.17, nothing in the statutes on recall elections shall be construed to deny any public officer recalled, or whose recall is sought, the right to contest the recall or any related proceedings in a court of competent jurisdiction for fraud or other illegality. Thus, a public officer whose recall is sought may review a copy of the recall petition and contest its certification. As provided in La. R.S. 18:1405(F), an action contesting certification of a recall petition shall be instituted within 15 days after the governor has issued a proclamation ordering the recall election, or if no recall election is called, within 15 days after the last day for the governor to call the election. Accordingly, the established election procedures provide the public officer whose recall is sought with the opportunity to challenge the names on the recall petition when there is suspicion about the validity of the signatures.
Under the established procedures of the election code, the registrar's duty is to certify that the signatures on the recall petition are electors in the voting area, and questions regarding the validity of such signatures are to be raised in the context of a suit by the public official subject to recall. In this way, improvised procedures in the course of recall efforts, such as the actions taken by the plaintiffs in this matter, may be avoided, particularly as such improvised procedures are hardly desirable in election matters.
For these reasons, we conclude that the Registrar of Voters for Claiborne Parish should not have deleted the printed name of any voter on the recall petition as *1131 these names were, in fact, "handwritten signatures" as contemplated under La. R.S. 18:1300.3(A). We find no error on the part of the trial court in either adding those printed signatures back onto the recall petition or adding back the signatures verified by affidavit. The trial court correctly concluded that the total number of signatures added back to the recall petition was sufficient to require the recall petition to be certified and sent to the governor.

CONCLUSION
For the reasons set forth above, we hereby affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Compare the procedure for challenging absentee ballots found in La. R.S. 18:1315.