Judgment rendered August 29, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,513-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LESLIE C. THOMPSON,
DANETTA C. HAYES, DEVIN
FLOWERS AND HENRY
BRADLEY

Plaintiffs-Appellees

versus

TINA COCKERHAM

Defendant-Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Jackson, Louisiana
Trial Court No. 37,250

Honorable William R. Warren, Judge

* * * * *

JEFFREY M. LANDRY
Attorney General

Counsel for Appellant

CAREY THOMPSON JONES
JEFFREY M. WALE
Assistant Attorneys General

GEORGE W. BRITTON, III

Counsel for Appellees

* * * * *

Before STONE, COX, and THOMPSON, JJ.

STONE, J., concurs with written reasons.

**THOMPSON, J.,**

This appeal arises from a recall petition seeking to remove James Harris, Mayor of the Town of Jonesboro, from office. Tina Cockerham, the Registrar of Voters for Jackson Parish, appeals the judgment of the trial court denying her exception of no cause of action and ordering her to return 49 names to the recall petition and to forward the petition of recall to the Governor of Louisiana. For the following reasons, we reverse the judgment of the trial court.

## FACTS

On January 3, 2023, a recall petition for the removal of James Harris, Mayor of Jonesboro, was filed with the Louisiana Secretary of State by Leslie C. Thompson, as chairman and Danettia C. Hayes, as vice chairman listed on the recall petition. On a date not otherwise disclosed on this record, the recall petition was presented to Tina Cockerham ("Cockerham"), the Registrar of Voters for Jackson Parish in accordance with La. R.S. 18:1300.1, *et seq.*[1] Pursuant to La. R.S. 18:3 and 18:1300.3(A), Cockerham reviewed the recall petition, which contained 811 potential electors' signatures, and ultimately disqualified 134 of those signatures from the recall petition for failing to meet the requirements of La. R.S. 18:3 of being a registered voter or not residing within the election voting area, or not including accurate date of birth information. Of the 134 signatures disqualified, 49 were disqualified on the basis that the actual signature on the recall petition did not match the signature on the electors' voter registration

---

[1] Documentation in the record from the registrar's office contains a date of June 26, 2023.

card, as required by La. R.S. 18:3.[2] The number of verified signatures required to trigger the recall sought by petitioners was 694, or 33⅓ percent, of the registered voters of the voting area, as set forth in La. R.S. 18:1300.2(B)(3)(a). With the disqualification of 134 of the signatures, the total number of verified signatures fell to 677, which is insufficient to satisfy the threshold requirement for the recall. The record evidence does not disclose whether Cockerham certified the petition and forwarded it to the governor, although neither party has contested this fact.

On August 15, 2023, a group of voters, including the chairman and vice-chairman ("plaintiffs" herein), who signed the recall petition, filed a "Petition for Writ of Mandamus" in the trial court seeking to compel Cockerham, as the sole named defendant, to "certify" the 49 "non-matching" signatures in accordance with La. R.S. 18:1300.3(D).[3] Plaintiffs alleged that Cockerham had the ministerial duty to certify all qualified electors who signed the recall petition and "may be compelled" to certify all qualified electors. Thus, plaintiffs prayed that Cockerham be directed to certify the 49 registered voters who signed the petition and resubmit the petition to the Governor's office for proclamation to proceed with the recall of James Harris.

---

[2] In pleadings filed in the trial court, plaintiffs stated that the recall petition contained 811 signatures, of which they needed 693 electors to force a recall election. Plaintiffs alleged that Cockerham disqualified 16.9% (134) of the electors who signed the petition. Cockerham has also alleged that with the 49 signatures restored, the total number of signers would be sufficient to trigger a recall.

[3] Pursuant to La. R.S. 18:1402, as a statutorily-mandated party, the Louisiana Secretary of State should have been named as a defendant in this matter. Under La. C.C.P. art. 927, however, it is discretionary with this Court to notice the nonjoinder of a party on its own motion. In light of this Court's reversal of the trial court's judgment on the merits, we find it unnecessary to act on this issue.

On August 17, 2023, Cockerham filed an "Exception of No Cause of Action on Behalf of the Registrar of Voters," challenging the request for mandamus in this matter. Cockerham alleged that plaintiffs failed to state a cause of action that would entitle them to relief on a writ of mandamus because the duty assigned to the registrar in reviewing signatures on a recall petition under La. R.S. 18:3 contains an "element of discretion that defeats the right to mandamus." Cockerham asserted that her act of *verifying* signatures was an exercise of her discretion in judging whether the signature on the petition appeared to be that of the voter. Cockerham argued that the exercise of that discretionary function was fatal to the petition for mandamus which is not available to command the performance of any discretionary act or where the evaluation of evidence must be exercised. Citing *Pineville City Court v. City of Pineville*, 22-00336 (La. 1/27/23), 355 So. 3d 600, Cockerham argued that in cases where a mandamus will not lie, the peremptory exception of no cause of action is the proper vehicle to defeat an application for writ of mandamus.[4]

By orders of the trial court, the hearings on both the petition for writ of mandamus and the exception of no cause of action were set for 9:30 a.m. on August 18, 2023.

At the hearing, counsel for the parties first argued the merits of the exception of no cause of action. Cockerham reasserted her argument that her act of refusing to verify some signatures was an exercise in discretion or a judgment call for which mandamus did not lie. Thus, she asserted that any

_____

[4] On August 18, 2023, Plaintiffs responded with a memorandum in support of writ of mandamus and therein presented arguments for why mandamus was proper.

3

challenge about her actions should have been made in a petition for declaratory judgment or via an action alleging errors in the registrar's judgment.

The plaintiffs provided the trial court with a copy of this Court's case of *Young v. Sanders*, 38,412 (La. App. 2 Cir. 4/7/04), 870 So. 2d 1126, *writ denied,* 04-1137 (La. 7/2/04), 877 So. 2d 146, to support the argument that the registrar of voters had no discretion to eliminate particular names from the recall petition "based on her arbitrary evaluation of the signature." In *Young*, this Court upheld the trial court's ruling restoring names to a recall petition. There the registrar struck the names because they did not look like the signatures on the voter registration cards. On appeal, this Court affirmed the trial court's ruling, while setting forth a jurisprudential procedure for the registrar's signature comparison. This Court concluded that the registrar's duty was limited to a comparison of the signatures, but "not a comparison of the hand or writing style" of the voter. Based upon this holding, plaintiffs contended that the registrar's duty to verify signatures was ministerial and that mandamus was proper. In the alternative, plaintiffs also asserted that the trial court was not bound by the caption of the pleading and that under the election law, was also authorized to determine whether the registrar abused her discretion in striking the 49 names at issue. Upon questioning by the trial court, counsel for plaintiffs stated that based upon the holding of *Young*, *supra,* he would not agree that the registrar had discretion in striking the names, but again suggested to the trial court that there was an "alternative" the trial court was not "relegated to saying this is a mandamus."

4

Cockerham argued that *Young*, *supra*, was an aberration, but conceded that the case was good law by which the trial court was bound.

Relating to the exception of no cause of action, the trial court initially ruled:

> Well Young does appear to be--does appear to be on point and it –it—To me in my reading of Young 18:3 gives the registrar the authority to compare the signatures, but the comparison is to determine if this person is an elector of this district as opposed to whether or not this is actually that person's signature. Because she's not a handwriting expert doesn't give her the authority to determine whether or not the signature is the signature of that particular elector. In other words, that's an issue that can be raised by –in this case the subject the person that's subject to the recall, Mr. Harris. So for those reasons, I will overrule your exception.

Cockerham then argued to the trial court, that "if she doesn't have the authority to strike names on the petition by virtue of the signature review, then there's nothing to try." The trial court stated that the registrar could strike names if she "determines, well, this person is not an elector or a voter." Cockerham agreed that the registrar could strike a name if the individual was not registered, but argued that the "signature issue" was an "entirely separate issue," and that the registrar's duty regarding signatures was "to determine whether or not that signature appeared to belong to the voter whose name was on the petition," or whether the signatures matched.

The parties jointly introduced J-1 into evidence (the only evidence introduced at the hearing), a copy of the extracted portions of the petition where Cockerham rejected the 49 voter signatures with the notation, "Not Voter Signature." Further, in lieu of Cockerham's testimony, the parties stipulated that if:

> Ms. Cockerham were to testify that she would testify that these names that they have under "Rejected Reason Not Voter

5

Signature" is because, in her opinion, the signatures did not match.

Solely based on this stipulation and the case of *Young*, *supra*, the trial court again denied the exception and summarily ordered the 49 signatures which were rejected to be added back to the petition and be verified." A written judgment memorializing these rulings followed on August 21, 2023. Cockerham appeals.

## DISCUSSION

On appeal, Cockerham raises three assignments of error. She first challenges the trial court's denial of her exception of no cause of action on grounds that mandamus does not lie in relation to the discretionary duties at issue. Cockerham also questions whether *Young*, *supra*, represents a current interpretation of La. R.S. 18:3(C) and challenges the trial court's authority to order her to return the 49 rejected signatures to the recall certification on the record before this Court.

Appellees contend that there was no error in the trial court's ruling, due to the fact that this case is indistinguishable from *Young, supra*. Appellees challenge Cockerham's authority to reject a person's handwritten signature based upon her opinion that the signature does not match and contend that there is no statutory authority for Cockerham's refusal to verify these electors on this ground.

*Law*

The exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. *Pineville City Court v. City of Pineville*, *supra*; *State ex rel. Tureau v. BEPCO, L.P.*, 21-0856 (La. 10/21/22), 351 So. 3d

6

297.  The burden of demonstrating that a petition fails to state a cause of action is on the mover, and a petition should be dismissed for failure to state a cause of action only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.  *Id.*  Because the exception of no cause of action raises a question of law and the trial court's decision is based solely on the sufficiency of the petition, review of the trial court's ruling on an exception of no cause of action is *de novo.  Reynolds v. Bordelon*, 14-2362 (La. 6/30/15), 172 So. 3d 589.  It has long been held that courts should look through the caption of pleadings in order to ascertain their substance and to do substantial justice to the parties.  *Smith v. Cajun Insulation*, 392 So. 2d 398 (La. 1980).  Louisiana law utilizes a system of fact pleading; no technical forms of pleading are required.  The plaintiff need not plead a theory of the case, but only facts that would support recovery.  *Robinson v. Allstate Ins. Co.*, 53,940 (La. App. 2 Cir. 5/26/21), 322 So. 3d 381, *writ denied*, 21-00906 (La. 10/19/21), 326 So. 3d 264.  A pleading may be expanded by issues actually litigated—by express or implied consent of the parties. *Boone Servs., LLC v. Ascension Par. Gov't*, 21-0524 (La. App. 1 Cir. 12/30/21), 340 So. 3d 1002.

Mandamus is a writ directing a public officer to perform a ministerial duty required by law.  *Jazz Casino Company, L.L.C. v. Bridges*, 16-1663 (La. 5/3/17), 223 So. 3d 488.  An exception of no cause of action is the appropriate vehicle to determine whether the petitioner has stated a cause of action for the issuance of a writ of mandamus on grounds that duty involved

7

is discretionary. *Pineville City Ct. v. City of Pineville*, *supra*; *Hays v. Volentine*, 29,555 (La. App. 2 Cir. 5/7/97), 694 So. 2d 633.

The recall election is a harsh remedy, and the provisions which govern the recall process must be strictly construed. *Hunter v. Jindal*, 45,130 (La. App. 2 Cir. 10/13/09), 20 So. 3d 592, *writ denied*, 09-2237 (La. 10/15/09), 18 So. 3d 1292.

Regarding the recall petition process, La. R.S. 18:3(D) directs the registrar of votes as follows:

> D. In determining the number of persons signing the petition who are electors in the voting area for the purpose of certifying the petition, the registrar shall not include any person who has not affixed to the petition his signature and the address at which he is registered to vote, any person whose signature has not been verified by the registrar, or any person whose name does not appear on the registrar's roll of electors. **To verify a signature on a petition, the registrar shall compare the handwritten signature on the petition with the signature on the original application card or any subsequent signature in the records of the registrar, including but not limited to precinct registers and affidavits filed pursuant to the provisions of R.S. 18:111(C), or any microfilm, microfiche, or scanned or electronically captured computerized images of such documents. If the signatures are sufficiently alike to identify the person who signed the petition as the person who is the registered voter, the signature shall be verified**. The signature of an elector shall include the surname under which the elector is registered to vote. The signature may include the elector's surname, first, and middle name, the initials of his surname, first, and middle name, or any combination thereof as the form in which his name appears on the petition, but shall not designate a title, designation, or deceptive name, nor shall it designate an occupational or professional description or abbreviation. However, the signature of a married woman may include her husband's surname, first, and middle name, the initials of his surname, first, and middle name, or any combination thereof, preceded by the title "Mrs." as the form in which her name appears on the petition, but only if she has registered under her husband's name preceded by the title "Mrs." (Emphasis added.)

Additionally, La. R.S. 18:1300.3(A) also provides in relevant part:

8

A. The registrar of voters of each parish in the voting area wherein a recall election is sought shall certify on the recall petition, within fifteen working days after it is presented to him for that purpose, the number of names appearing thereon, the number of qualified electors of the voting area within the parish whose handwritten signatures appear on the petition, and also the total number of electors of the voting area within the parish as of the date of the filing of the petition with the secretary of state.

The registrar is also required to indicate names appearing on the petition of individuals who are not electors of the voting area. La. R.S. 18:1300.3(A).

La. R.S. 18:1300.3(D) states:

D. When any officer designated in this Chapter refuses to execute the certificates provided for, any signer of a recall petition, or the chairman or vice chairman designated to represent the signers, may compel the execution of the certificates by summary process in the district court having jurisdiction over the officer.

La. R.S. 18:1401(E)(2) allows the chairman or vice chairman listed on the recall petition to bring an action contesting the certification of the recall petition certified pursuant to R.S. 18:3, and La. R.S. 18:1409(A)(1) authorizes such an action to be tried summarily, without a jury, and in open court.

*Analysis*

After *de novo* review, we find no error in the trial court's ruling denying Cockerham's exception of no cause of action. Although originally filed as a petition for mandamus under La. R.S. 18:1300.3(D), counsel for plaintiffs orally expanded the pleadings in this matter at the scheduled hearing, to arguably assert an alternate cause of action contesting the certification of the recall petition under La. R.S. 18:1401 and 18:1409. To that end, the trial court allowed the parties to stipulate to the testimony of

9

Cockerham, thereby authorizing this limited evidence to be introduced at the hearing in this matter. Unfortunately, on the record before this Court, it is difficult to determine under which provision the trial court ultimately rendered judgment or whether the trial court peremptorily granted mandamus in this matter. Considering both counsel's expansion of the pleadings as well as the evidence considered by the trial court, we find it reasonable to construe the trial court's judgment as a ruling based upon the alternate theory of recovery and that this matter was properly converted to a summary procedure for which a cause of action exists. We therefore decline to disturb the trial court's ruling denying Cockerham's exception of no cause of action.

On the merits of this matter, however, we find merit to Cockerham's argument on the remaining assignments of error. In oral reasons for ruling, the trial court noted its reliance solely on the parties' stipulation that Cockerham rejected the signatures, because, in her opinion, the signatures did not match, and this Court's 2004 case of *Young v. Sanders*, *supra.* Indeed, the facts of *Young* are very similar to those at issue in the present matter, with one very important distinguishing fact. In 2004, the time *Young* was decided, La. R.S. 18:3(C) contained no signature verification process. Indeed, this Court noted such in its appellate opinion and was ultimately constrained to jurisprudentially define the registrar's duties in this Court's appellate opinion.

This Court, in *Young*, *supra*, based upon the limited language of La. R.S. 18:3, commented:

> The registrar has neither the duty, nor the discretion, to compare a signature on a voter registration card and then strike the

> signature if, in the registrar's opinion, the signatures were not made by the same hand.

And continued:

> Had the legislature intended for the registrar to have the significant burden of rejecting signatures on a recall petition for their apparent failure to "reasonably compare" with signatures on voter registration cards, then the legislature would have provided a procedure for the registrar to challenge a signature, to send notice to the voter who signature was questioned, and to provide the voter with an opportunity to verify the signature.

*Young*, *supra*.

In a possible response to this Court's observations in *Young*, in the immediately following 2005 Louisiana legislative session, the legislature amended La. R.S. 18:3 to include the statutory verification process contained in present-day La. R.S. 18:3. Additionally, La. R.S. 18:1401 and La. R.S. 18:1300.17 provide an opportunity for the public official or those seeking a recall to address any deficiencies in the petition, including disqualification of electors. In light of these facts, it is our view that *Young* no longer remains persuasive or valid authority for the resolution of the specific facts and implications of this matter. Thus, we find the trial court's reliance on this case to order a blanket return of all 49 signatures to have been in error. We also find that the remaining evidence presented at the hearing was insufficient to satisfy the plaintiffs' burden to establish that the verification utilized by Cockerham created reversible error. Without more, the joint stipulation of counsel regarding Cockerham's testimony as well as the evidence of notations showing that Cockerham rejected the 49 signatures for not matching shows nothing more than the fact that Cockerham performed her duty to verify the signatures in compliance with La. R.S. 18:3. With no additional evidence in the form of the recall petition bearing signatures and

the voter registration cards of the disqualified signatures for comparison or testimony from Cockerham regarding her reasons for striking each signature or perhaps other independent witness testimony verifying the validity of the signatures, we cannot find that plaintiffs have proven their case.[5] For these reasons, we reverse the judgment of the trial ordering Cockerham to revise the certification and add back the 49 signatures to the recall petition and forward same to the Governor.

## CONCLUSION

For the reasons set forth above, we hereby reverse the judgment of the trial court ordering the return of 49 signatures to the recall petition. The recall petition as originally verified by Cockerham in the recall petition is reinstated. Costs of this appeal are assessed to appellees.

**REVERSED**.

---

[5] For instance, in *Young*, *supra*, the plaintiffs presented the testimony of a Claiborne Parish notary public who testified that she notarized the 49 signatures at issue. The affidavits were admitted into evidence.

**STONE, J., concurring**

Although I agree with the rationale and decision of the majority in this case, I would comment that this case illuminates the necessity of assuring and maintaining the integrity of our election process. La. R.S. 18:3 grants the registrar of voters, an unelected official, the discretion to effectively invalidate voter signatures he deems not to bear sufficient likeness to the voter's registration signature. The potential for abuse by a registrar of voters is obvious. On the other hand, the potential for fraudulent voter signatures absent any such discretion is also obvious.

Accordingly, a voter whose signature is rejected must be given timely notice and a meaningful opportunity to be heard in conformity with due process. Merely providing that such matters be remedied through summary proceeding is too vague.