# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **28th day of June, 2024** are as follows:

**BY Genovese, J.:**

2024-C-00055

*WATSON MEMORIAL SPIRITUAL TEMPLE OF CHRIST D/B/A WATSON MEMORIAL TEACHING MINISTRIES, CHARLOTTE BRANCAFORTE, ELIO BRANCAFORTE, BENITO BRANCAFORTE, JOSEPHINE BROWN, ROBERT PARKE, NANCY ELLIS, MARK HAMRICK, ROBERT LINK, CHARLOTTE LINK, ROSS MCDIARMID, LAUREL MCDIARMID, JERRY OSBORNE, JACK STOLIER, AND WILLIAM TAYLOR VS. GHASSAN KORBAN, IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF THE SEWERAGE AND WATER BOARD OF NEW ORLEANS (Parish of Orleans Civil)*

AFFIRMED AND REMANDED TO THE DISTRICT COURT. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons.
Griffin, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2024-C-00055

## WATSON MEMORIAL SPIRITUAL TEMPLE OF CHRIST D/B/A WATSON MEMORIAL TEACHING MINISTRIES, CHARLOTTE BRANCAFORTE, ELIO BRANCAFORTE, BENITO BRANCAFORTE, JOSEPHINE BROWN, ROBERT PARKE, NANCY ELLIS, MARK HAMRICK, ROBERT LINK, CHARLOTTE LINK, ROSS MCDIARMID, LAUREL MCDIARMID, JERRY OSBORNE, JACK STOLIER, AND WILLIAM TAYLOR

## VS.

## GHASSAN KORBAN, IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF THE SEWERAGE AND WATER BOARD OF NEW ORLEANS

### On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans Civil

**GENOVESE, J.**

This Court granted a writ of certiorari in this mandamus proceeding, wherein Plaintiffs (collectively, the "Neighbors"),[1] who prevailed in an inverse condemnation action, sought to compel the payment of damages awarded at trial from Defendant, Ghassan Korban ("Korban"), in his official capacity as the Executive Director of the Sewerage and Water Board of New Orleans (the "SWB"). The issues presented are whether the instant matter is barred by res judicata, and whether a money judgment based on inverse condemnation under the Louisiana Constitution can be enforced via a mandamus action. The appellate court found that res judicata did not apply and held that the payment of a judgment awarding just compensation for inverse condemnation is a ministerial duty; therefore, courts had the authority to issue a writ of mandamus to satisfy the Neighbors' money judgment.

---

[1] The Neighbors include: Watson Memorial Spiritual Temple of Christ d/b/a Watson Memorial Teaching Ministries; Charlotte, Elio, and Benito Brancaforte; Josephine Brown; Robert Parke and Nancy Ellis; Mark Hamrick; Robert and Charlotte Link; Ross and Laurel McDiarmid; Jerry Osborne; Jack Stolier; and, Dr. William Taylor.

For the reasons that follow, we affirm the ruling of the appellate court and remand the matter to the district court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The Neighbors claimed that the SWB damaged and interfered with their use and enjoyment of their private homes and church during the Southeast Louisiana Urban Drainage Project (the "SELA Project"), which took place between 2013 and 2016. Multiple groups of residents, including the Neighbors, filed lawsuits to recover damages sustained as a result of the SELA Project.[2] Following a trial on the merits, the Neighbors were awarded $998,872.47 in cumulative damages for inverse condemnation, as well as attorneys' fees and costs, totaling $517,231.03. The district court's finding, that the SWB was liable to the Neighbors for inverse condemnation, was affirmed on appeal. *Id.*

Thereafter, the SWB did not appropriate funds to satisfy the judgment rendered in the *Lowenburg* suit. In response, the Neighbors filed a separate lawsuit in federal district court against the SWB and Korban pursuant to 42 U.S.C. § 1983, alleging, among other things, that the SWB's failure to pay the inverse condemnation judgment to the Neighbors constituted a secondary taking under the Fifth Amendment of the United States Constitution. *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 543 F.Supp.3d 373 (E.D. La. 2021), *aff'd*, 29 F.4th 226 (5th Cir.), *cert. denied*, —— U.S. ——, 143 S.Ct. 353 (2022) ("*Ariyan*"). As to the relief sought, the Neighbors requested a writ of execution seizing the SWB's property to satisfy the judgment. Separately, they sought a declaration that the SWB was contractually obligated to seek reimbursement from the United States Army Corps of Engineers for the judgment via a procedure the two entities agreed to.

---

[2] The facts of these claims are discussed in detail in *Lowenburg v. Sewerage & Water Board of New Orleans*, 19-524 (La.App. 4 Cir. 7/29/20), — So.3d —, 2020 WL 13992630 ("*Lowenburg*").

2

The SWB and Korban filed a motion to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), which the federal district court granted. The federal district court expressed sympathy with the Neighbors' frustrations, but found the claim "legally baseless[,]" relying on "centuries of precedent establishing that a state's temporary deprivation of damages does not violate any constitutional right." *Ayrian, Inc.*, 543 F.Supp.3d at 377-78. The federal court also noted practical considerations compelling dismissal, stating that "[d]oing so would likely run afoul of the full faith and credit statute, encourage forum shopping, and erode the comity federal courts are to diligently maintain with state courts, who are certainly capable of enforcing their own judgments." *Id.* at 379. It further opined: "Under no constitutional guise should federal courts 'become embroiled in a party's attempt to enforce state court judgments . . . against states and municipalities.'" *Id.* (citing *Williamson v. Chicago Transit Auth.*, 185 F.3d 792, 795 (7th Cir. 1999)). The court also declined to exercise jurisdiction over the Neighbors' request for declaratory relief, opining:

> Here, there is little reason to – and perhaps abundant reason *not* to – allow the plaintiffs' largely conclusory declaratory judgment allegations to proceed as standalone claims in federal court. In 2017, then-District Judge Engelhardt remanded a previous iteration of this litigation to state court in light of this Court's "limited jurisdiction and in light of the particularly local nature of this dispute with the Sewerage and Water Board." See Sewell v. Sewerage & Water Bd. of New Orleans, 2017 WL 5649595, at *1 (E.D. La. Jan. 5, 2017), *aff'd,* 697 F. App'x 288 (5th Cir. 2017). The plaintiffs' dispute with the SWB is no less local now, and for the reasons discussed at length with regard to the deficient § 1983 claims at the heart of this case, dismissing this action in favor of further state-court proceedings – with state-court judges, state-court judgments, state-resident plaintiffs, and a state-agency defendant – is the best use of this Court's "unique and substantial discretion." Cf. Wilton, 515 U.S. at 286, 115 S.Ct. 2137.

*Id.* at 380-81. The court reasoned that "State courts can enforce their own judgments." *Id.* at 381. Finally, the court denied the Neighbors' request to amend their complaint, finding that any amendment would be "futile." *Id.* at 381, n. 8.

3

The United States Fifth Circuit affirmed the lower court's grant of the motion to dismiss, agreeing that there is long-standing precedent that there is no property right to timely payment on a judgment. *Ariyan, Inc.*, 29 F.4th at 228. With regard to the Neighbors' separate claim for declaratory relief, the United States Fifth Circuit noted that "[t]he Declaratory Judgment Act 'does not of itself confer federal jurisdiction on the federal courts.'" *Id.* at 232 (quoting *Jolly v. United States*, 488 F.2d. 35, 36 (5th Cir. 1974)). Thus, once the Neighbors' 42 U.S.C. § 1983 claims were dismissed, "[w]ithout an underlying federal claim, or any other basis for jurisdiction asserted by the Plaintiffs, the district court properly declined to hear Plaintiffs' standalone claim to declaratory relief." *Id.* The U.S. Fifth Circuit also affirmed the district court's denial of the Neighbors' request for leave to amend their complaint, finding that "amendment would be futile." *Id.*

The Neighbors then instituted the current action in state district court by filing a Petition for Writ of Mandamus and Writ of Fieri Facias. The Neighbors asserted that the damages awarded at trial for inverse condemnation were a just compensation award pursuant to the Louisiana Constitution and the Fifth Amendment of the United States Constitution, but that the SWB had failed to appropriate funds to satisfy the underlying judgment. According to the Neighbors, the constitutional duty to pay just compensation for the taking or damaging of property is a ministerial duty required by law, and the district court had the power and authority to issue a writ of mandamus directing the immediate payment of the just compensation award.

Korban responded by filing an exception of res judicata on the ground that the federal court litigation sought identical relief arising from the same dispute: payment of the money judgment. Korban also filed an exception of no cause of action, arguing that the Louisiana Constitution prohibits seizure of state assets to satisfy money judgments and that such judgments may only be paid from funds appropriated by the legislature or the political subdivision against which the

4

judgment was rendered. La.R.S. 13:5109. Therefore, Korban asserted that courts may not order appropriation of funds through mandamus, as that power is reserved to the legislature.

Following a hearing, the district court rendered judgment denying Korban's exception of res judicata, granting Korban's exception of no cause of action, and dismissing the Neighbors' claims with prejudice. The Neighbors appealed.

The appellate court reversed and remanded, finding that res judicata did not apply and holding that the payment of a judgment awarding just compensation for inverse condemnation is a ministerial duty; therefore, courts had the authority to issue a writ of mandamus to satisfy the Neighbors' money judgment. *Watson Memorial Spiritual Temple of Christ v. Korban*, 23-293 (La.App. 4 Cir. 12/13/23), 382 So.3d 1035. Thereafter, this Court granted Korban's writ of certiorari. *Watson Memorial Spiritual Temple of Christ v. Korban*, 24-55 (La. 3/12/24), 380 So.3d 567.

**Exception of res judicata**

Korban argues that the doctrine of res judicata precludes the instant action given the prior federal court litigation. We find no merit to this contention.

"[W]hen a state court is called upon to decide the preclusive effect of a judgment rendered by a federal court exercising federal question jurisdiction, it is the federal law of res judicata that must be applied." *Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co.*, 95-654, 95-671, p. 14 (La. 1/16/96), 666 So.2d 624, 633 (citing *Reeder v. Succession of Palmer*, 623 So.2d 1268, 1271 (La.1993)). Federal appellate courts reviewing the res judicata effect of a prior judgment apply the *de novo* standard of review. *Test Masters Educ. Servs. Inc.*, v. *Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055, 126 S.Ct. 1662 (2006) (citing *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 546 (5th Cir.), *cert. denied*, 534 U.S. 945, 122 S.Ct. 329 (2001)).

5

Under the federal res judicata law, a judgment bars a subsequent suit if: (1) both cases involve the same parties; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior decision was a final judgment on the merits; and, (4) the same cause of action is at issue in both cases. *Terrebonne Fuel & Lube, Inc.*, 666 So.2d at 633. Notably, where the four elements of the res judicata test are met, courts must also determine whether "'the previously unlitigated claim could or should have been brought in the earlier litigation.'" *In re Paige*, 610 F.3d 865, 870 (5th Cir. 2010) (quoting *D-1 Enters., Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989); *see also In re Howe*, 913 F.2d 1138, 1145 (5th Cir. 1990); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 388 (5th Cir. 2000)).

This Court also recognized an exception to the application of the doctrine of res judicata in *Reeder*, 623 So.2d 1268, which was relied upon by the appellate court in this case. Korban argues that in declining to apply the preclusive effect of res judicata, the appellate court misapplied *Reeder*, in holding that "Korban has failed to demonstrate that the federal court could have exercised jurisdiction over the state mandamus claim[.]" *Watson Memorial Spiritual Temple of Christ*, 382 So.3d at 1045. We find this argument to be without merit.

In *Reeder*, 623 So.3d at 1272-73 (emphasis added), we opined:

> Succinctly stated, if a set of facts gives rise to a claim based on both state and federal law, and the plaintiff brings the action in a federal court which had "pendent" jurisdiction to hear the state cause of action, but the plaintiff fails or refuses to assert his state law claim, res judicata prevents him from subsequently asserting the state claim in a state court action, **unless the federal court clearly would not have had jurisdiction to entertain the omitted state claim, or, having jurisdiction, clearly would have declined to exercise it as a matter of discretion.** Restatement (Second) of Judgments §§ 24, 25 and 25, Comment e. E.g., *Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286, 1315 (5th Cir.1971); *Anderson v. Phoenix Inv. Counsel of Boston,* 387 Mass. 444, 440 N.E.2d 1164, 1168 (1982).

The *Reeder* Court explained:

Pendent jurisdiction is a doctrine of discretion which allows the trial court a wide latitude of choice in deciding whether to exercise that judicial power. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). A federal court must consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state law claims. When the balance of these factors indicates that a case properly belongs in state court, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. The doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *United Mine Workers v. Gibbs*, *supra*.

. . . .

The principles and standards of pendent jurisdiction support and mesh with the principles of res judicata. The plaintiff is required to bring forward his state theories in the federal action in order to make it possible to resolve the entire controversy in a single lawsuit. Restatement (Second) of Judgments § 25, Reporter's Note at 228 (1982); *Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d at 1315. The federal district court, exercising its discretion, may decline jurisdiction of some or all of the plaintiff's state law claims if the court finds that the objectives of judicial economy, convenience and fairness to litigants, as well as other factors, will be served better thereby. *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. To insure that this decision will be made fairly and impartially by the court, rather than by a party seeking the tactical advantage of splitting claims, however, the claim preclusion rules further provide that, unless it is clear that the federal court would have declined as a matter of discretion to exercise its pendent jurisdiction over state law claims omitted by a party, a subsequent state action on those claims is barred. Restatement (Second) of Judgments § 25, Comment e; *Woods Exploration and Producing Co. v. Aluminum Co. of America, supra; Anderson v. Phoenix Inv. Counsel of Boston*, 440 N.E. 2d at 1169.

In view of the breadth of the federal trial courts' discretion and the necessary indeterminacy of the discretionary standards, in order for a subsequent court to say that a federal district court clearly would have declined its jurisdiction of a claim not filed, the subsequent court must find that the previous case was an exceptional one which clearly and unmistakably required declination. The rules do not countenance a plaintiff's action in failing to plead a theory in a federal court with the hope of later litigating the theory in a state court as a second string to his bow. Therefore, the action on such omitted claims is barred if it is merely possible or probable that the federal court would have declined to exercise its pendent jurisdiction. Restatement (Second) of Judgments

§ 25, Comment e. See also *Anderson v. Phoenix Inv. Counsel of Boston,* 387 Mass. 444, 440 N.E.2d 1164, 1169 (1982).

*Id.* at 1273-74.

The above quoted language of the federal courts in the instant matter makes it clear that it would have declined to exercise its jurisdiction. The federal district court and the appellate court were both decisive in ruling that this matter belonged in state court.

Additionally, the discretionary nature of federal supplemental jurisdiction is addressed under 28 U.S.C. § 1367(c), which provides four grounds for declining to entertain supplemental jurisdiction over a state law claim:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*See also Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (citing 28 U.S.C. § 1367(c)). Relevant to the matter before us, this case presents a *res novo* issue of state law, and the federal court dismissed the claim over which it had original jurisdiction. Moreover, this matter involving a state court judgment, Louisiana constitutional provisions, a state inverse condemnation judgment against a state political subdivision, and the issue of whether mandamus may lie to enforce that state judgment presents such "exceptional circumstances."

For these reasons, we agree with the appellate court that Korban failed to demonstrate that the federal court would have exercised jurisdiction over the state mandamus action. *Watson Memorial Spiritual Temple of Christ*, 382 So.3d at 1045. Therefore, we hold that the appellate court did not err in finding that the instant mandamus suit was not barred by res judicata. Having so concluded, we next address whether the Neighbors' have stated a cause of action.

**Exception of no cause of action**

Because it presents a question of law, the sustaining of an exception of no cause of action is subject to *de novo* review. *Wederstrandt v. Kol*, 22-1570, p. 4 (La. 6/27/23), 366 So.3d 47, 51 (quoting *Ramey v. DeCaire*, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 119). "A cause of action, when examined in the context of a peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant." *Law Indus., LLC v. Dep't of Educ.*, 23-794, p. 4 (La. 1/26/24), 378 So.3d 3, 7 (citing *Ramey*, 869 So.2d at 118; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1238 (La. 1993)). "The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading." *Id.* (citing *Ramey*, 869 So.2d at 118; *Everything on Wheels Subaru, Inc.*, 616 So.2d at 1235). The court reviews the petition and accepts well-pleaded allegations of fact as true. *Id.* (citing *Ramey*, 869 So.2d at 118; *Jackson v. State ex rel. Dep't of Corrections*, 00-2882, p. 3 (La. 5/15/01), 785 So.2d 803, 806; *Everything on Wheels Subaru, Inc.*, 616 So.2d at 1235). The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Id.* (citing *Ramey*, 869 So.2d at 118; *Montalvo v. Sondes*, 93-2813 (La. 5/23/94), 637 So.2d 127, 131).

In this case, the relief sought by the Neighbors' petition is a writ of mandamus. This Court has stated:

> A writ of mandamus is an extraordinary remedy that is directed at a public officer to compel the performance of a ministerial duty required by law. *Jazz Casino Company, L.L.C. v. Bridges,* 16-1663 (La. 5/3/17), 223 So.3d 488, 492 (citing La. C.C.P. arts. 3861 and 3863). "A 'ministerial duty' is one 'in which no element of discretion is left to the public officer,' in other words, 'a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law.'" *Id*. (quoting *Hoag* [*v. State*, 04-0857, p. 7 (La. 12/1/04), 889 So.2d 1019, 1024)]. "If a public officer is vested with any element of discretion, mandamus will not lie." *Id*.

*Crooks v. State Through Dep't of Nat. Res.*, 22-625, p. 3 (La. 1/1/23), 359 So.3d 448, 450.

Resolution of the issue of whether mandamus may lie to compel satisfaction of the Neighbors' judgment for inverse condemnation against Korban necessarily requires the interpretation of constitutional articles, which, as with the exception of no cause of action, is subject to a *de novo* standard of review. *Id.* (citing *Newman v. Marchive P'hip, Inc. v. City of Shreveport*, 07-1890, p. 3 (La. 4/8/08), 979 So.2d 1262, 1265). The two constitutional provisions implicated in this case are La. Const. art. XII, § 10, and La. Const. art. I, § 4(B)(1).

This Court has addressed these constitutional provisions in earlier decisions and has recognized that La. Const. art. XII, § 10 creates a "'frustrating dichotomy for the state's judgment creditors.'" *Crooks*, 359 So.3d at 451 (quoting *Newman*, 979 So.2d at 1266; *see also* Lee Hargrave, *"Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974*, 43 La. L. Rev. 647, 653 (1983) ("the apparent liberality of abolishing most immunity from suit was offset by the continuation of a severe limitation on a private citizen's ability to enforce a judgment against the state, a state agency, or a local governmental entity")). *Crooks*, 359 So.3d at 450, also recognized that the doctrine of separation of powers is implicated.

> The Louisiana Constitution divides governmental power among separate legislative, executive, and judicial branches and provides that no one branch shall exercise powers belonging to the others. *Hoag v. State,* 04-0857, p. 4 (La. 12/1/04), 889 So.2d 1019, 1022 (citing La. Const. art. II, §§ 1 and 2). The judicial branch is prohibited from infringing upon the inherent powers of the legislative and executive branches. *Id.* When litigants seek to invoke the power of the judiciary to compel another branch of government to perform or act, we must closely and carefully examine whether the action is within the confines of our constitutional authority. *Id.*

However, as recognized by the appellate court, the question of whether a money judgment against a political subdivision based on inverse condemnation can, under the Louisiana Constitution, be enforced via a mandamus action is a *res nova* issue

10

of Louisiana constitutional law. *Watson Memorial Spiritual Temple of Christ*, 382 So.3d at 1041. Therefore, to resolve the issue, we begin our analysis with the applicable law and settled jurisprudence.

First and foremost, we consider the language of the relevant constitutional provisions. Louisiana Constitution Article XII, § 10(C) provides:

> **Limitations; Procedure; Judgments.** Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.

Louisiana Constitution Article I, § 4(B)(1) provides, in part: "Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." Notably, La. Const. art. XII, § 10(C) includes the word "shall," and La. Const. art. I, § 4(B)(1) includes the phrase "shall not." "The word 'shall' is mandatory and the word 'may' is permissive." La.R.S. 1:3.

> Under well-established rules of interpretation, the word "shall" excludes the possibility of being "optional" or even subject to "discretion," but instead "shall" means "imperative, of similar effect and import with the word 'must.'" *Sensebe v. Canal Indem. Co.,* 10-0703, p. 9 (La.1/28/11), 58 So.3d 441, 447, *citing Borel v. Young,* 07-0419 (La.11/27/07), 989 So.2d 42, *Pittman Construction Co. v. Housing Authority of Opelousas,* 167 F.Supp. 517, 523 n. 38(W.D.La.1958), *aff'd,* 264 F.2d 695 (5th Cir.1959), and BLACK'S LAW DICTIONARY 1375 (6th ed. 1990).

*Louisiana Fed'n of Teachers v. State*, 13-120, p. 26 (La. 5/7/13), 118 So.3d 1033, 1051. Undisputedly, by virtue of La. Const. art. I, § 4(B)(1), the Neighbors are entitled to the payment of just compensation by Korban; however, the narrow issue

before the Court is whether said payment may be judicially compelled by mandamus.

Louisiana Revised Statutes 13:5109(B)(2)[3] provides that a judgment against the state or its political subdivision is only payable by funds appropriated for the purpose of satisfying that judgment. Generally, "[t]he very act of appropriating funds is, by its nature, discretionary and specifically granted to the legislature by the constitution." *Hoag*, 889 So.2d at 1024. However, in *Lowther v. Town of Bastrop*, 20-1231, p. 5 (La. 5/13/21), 320 So.3d 369, 372, this Court opined that "[m]andamus may lie against a political subdivision when the duty to be compelled is ministerial and not discretionary." "[T]he relevant consideration is 'whether the act of appropriating funds to pay the judgment . . . is a purely ministerial duty for which mandamus would be appropriate.'" *Id.* (quoting *Hoag*, 889 So.2d at 1023). The critical element necessary for the issuance of a writ of mandamus is that a public officer is not vested with any element of discretion. If discretion exists, mandamus will not lie. *Id.* at 371 (quoting *Hoag*, 889 So.2d at 1024).

In *Lowther*, 320 So.3d 369, this Court considered whether plaintiffs had a cause of action for a writ of mandamus compelling a municipality to satisfy a judgment for back wages owed to its firefighter employees. Therein, former and current firefighters ("the Firefighters") filed a petition for a writ of mandamus seeking enforcement of a judgment they had already procured against their employer, the City of Bastrop ("the City"). *Id.* at 370. The City filed an exception of no cause of action, arguing that the Firefighters were statutorily and

---

[3] Louisiana Revised Statutes 13:5109(B)(2) provides:

Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.

constitutionally prohibited from using a writ of mandamus as an alternative means to execute a judgment against a political subdivision. *Id.* In an amending petition, the Firefighters averred the City had a ministerial duty to pay them the amount owed in satisfaction of the judgment and/or appropriate the funds necessary to pay as mandated by applicable law. *Id.* The district court sustained the City's exception of no cause of action and dismissed the Firefighters' petition for a writ of mandamus. *Id*. The appellate court, citing La. Const. art. XII, § 10(C) and La.R.S. 13:5109(B)(2), concluded that the "[p]ayment of a judgment is not a ministerial act." *Lowther v. Town of Bastrop*, 53,586, p. 6 (La.App. 2 Cir. 9/23/20), 303 So.3d 681, 687. Thus, it held that the Firefighters had no cause of action to enforce the judgment by a writ of mandamus. *Id*. The Firefighters sought review by this Court.

Before this Court, the Firefighters argued that La. Const. art. VI, § 14(A)(2)(e), in conjunction with La.R.S. 33:1992(A), La.R.S. 33:1992(B), and La.R.S. 33:1969, provided them a statutorily mandated and constitutionally protected right to payment of the back wages quantified in the judgment. Therefore, the combination of these laws served as either a *de facto* appropriation or made the appropriation for payment of the back wages a ministerial function. *Lowther*, 320 So.3d at 372. Countering, the City acknowledged its duty to pay the Firefighters; however, it argued that the firefighters were subject to the dictates of La. Const. art. XII, § 10(C) and La.R.S. 13:5109(B). *Id*. We concluded that because the duty to pay the Firefighters was statutorily and constitutionally mandated, it was ministerial in nature, opining that "[t]he clear language of La. Const. art. VI, § 14(A)(2)(e) and the Title 33 provisions reflect a mandate from the legislature that imposes a ministerial duty on the City to appropriate funds to pay the Firefighters back wages

13

irrespective of La. Const. art. XII, § 10(C) and La. R.S. 13:5109(B)."[4]  *Id.* at 372-73.  Therein, we stated:

> The ministerial nature of the duty of the City to pay the Firefighters does not change to a discretionary one simply because the Firefighters obtained a monetary judgment confirming and quantifying the City's payment obligation. Adopting such a distinction would allow the City to disregard its mandatory obligations pursuant to La. Const. art. VI, § 14(A)(2)(e), La. R.S. 33:1992(A), La. R.S. 33:1992(B), and La. R.S. 33:1969 under the guise that a court-issued mandamus compelling performance of these ministerial duties violates the separation of powers doctrine. *See Jazz Casino*, 16-1663, p. 13, 223 So.3d at 497; *New Orleans Fire Fighters*, 13-0873, p. 20, 131 So.3d at 424. This result would defeat the very purpose of the express constitutional protections to which the Firefighters are entitled.

*Id.* at 373-74.  For these reasons, the *Lowther* Court concluded that the action requested by the Firefighters for a writ of mandamus was the City's ministerial duty to appropriate funds necessary to satisfy the judgment as required by La. Const. art. VI, § 14(A)(2)(e), La.R.S. 33:1992(A), La.R.S. 33:1992(B), and La.R.S. 33:1969. *Id.* at 374.  Accordingly, we reversed the court of appeal and held that the Firefighters did state a valid cause of action.  *Id.*

In *Crooks*, 359 So.3d 448, we considered whether mandamus could lie to compel the state to pay a judgment rendered against it for mineral royalty payments. The district court had recognized plaintiffs as owners of certain riverbanks and ordered the Louisiana Department of Natural Resources ("LDNR") to pay damages for expropriation and mineral royalties received from the riverbank leases.  *Id.* at

---

[4] In reaching our conclusion, we found the City's reliance on *Newman*, 979 So.2d 1262, and *Hoag*, 889 So.2d 1019, for the proposition that the Firefighters were indistinguishable from any other judgment creditor to be inapposite, noting the following:

> In *Jazz Casino*, we distinguished the mandatory nature of paying judgments for tax overpayment refunds and expropriation compensation from the discretionary nature of paying judgments arising from matters of contract or tort. 16-1663, pp. 10-11, 223 So.3d at 495-96.  Thus, *Newman* is distinguishable because the judgment therein adjudicated a breach of contract claim. 07-1890, pp. 1-2, 979 So.2d at 1264. *Hoag* is distinguishable because plaintiffs therein sought payment from the legislature itself in contravention of La. Const. art. III, § 16. 04-0857, pp.7-8, 889 So.2d 1019, 1024; *New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 13-0873, p. 15 (La.App. 4 Cir. 12/18/13), 131 So.3d 412, 421-22.

This Court concluded that, in contrast, the matter before us presented no such conflict. *Id.*

450. This Court affirmed the award for mineral royalties, but vacated the expropriation award after finding the claim for inverse condemnation had prescribed. *Crooks v. Dep't of Nat. Res.,* 19-160, p. 20 (La. 1/29/20), 340 So.3d 574, 587. When LDNR failed to satisfy the judgment, plaintiffs sought a mandamus to enforce their payment, arguing that depositing funds into the registry of the court to comply with a final judgment is a ministerial act. *Crooks,* 359 So.3d at 450. In opposition, LDNR argued that mandamus violated La. Const. art. XII, § 10(C) and La.R.S. 13:5109(B)(2), and that the funds sought were unavailable. *Id.* The district court denied the writ of mandamus. *Id.* The court of appeal reversed, finding that mandamus was an appropriate remedy as the funds sought were not public funds, and the judgment could not be enforced by ordinary means. *Crooks v. State Through Dep't of Nat. Res.,* 21-633 (La.App. 3 Cir. 3/16/22), 350 So.3d 901, 909-10.

In this Court, the plaintiffs in *Crooks* argued that mandamus was proper, relying on *Jazz Casino,* 223 So.3d 488, and *Lowther,* 320 So.3d 369. *Crooks,* 359 So.3d at 451. LDNR countered, arguing that satisfaction of the judgment was a power that lies only with the legislature because the initial claim arose in tort. *Id. See* La. Const. art. XII, § 10(C); La.R.S. 13:5109(B)(2). *Crooks* held that in the absence of constitutional and statutory provisions similar in effect to those in *Jazz Casino* and *Lowther,* the judgment was payable only when funds were appropriated by the legislature. *Id.* at 452. Therefore, we concluded that the payment of the judgment for the return of mineral royalties received by the state required legislative appropriation, an act that was discretionary in nature. *Id.* at 449. Thus, we held that the appellate court erred in issuing the writ of mandamus. *Id.* at 452.

In reaching our conclusion in *Crooks,* 359 So.3d 448, that mandamus was improper, this Court acknowledged there are "specific limited exceptions wherein the duty to pay a judgment is constitutionally and statutorily mandated and therefore ministerial in nature." *Id.* at 451. Therein, we explained:

15

> These constitutional and statutory provisions operate as *de facto* appropriations by the legislature irrespective of the general limitations set forth in La. Const. art. XII, § 10(C) and La. R.S. 13:5109(B)(2). *See Lowther*, 20-1231, p. 6, 320 So.3d at 372-73 (citing *Perschall v. State*, 96-0322, p. 22 (La. 7/1/97), 697 So.2d 240, 255). Where such provisions exist, courts are merely enforcing the positive law and not encroaching on functions constitutionally dedicated to the legislative branch. *Lowther*, 20-1231, p. 5, 320 So.3d at 372; *Hoag*, 04-0857, p. 4, 889 So.2d at 1022.

*Id.*

Subsequent thereto, this Court decided *Mellor v. Parish of Jefferson*, 22-1713 (La. 9/1/23), 370 So.3d 388, wherein defendants, the Jefferson Parish School Board and Jefferson Parish Sheriff, challenged the constitutionality of a district court judgment ordering them to remit funds into the district court's registry. The disputed funds had been collected through the enforcement of a Jefferson Parish ordinance. *Id.* at 389. After this Court affirmed the district court's initial decision finding the ordinance unconstitutional as violative of La. Const. art. VI, § 5(G) and La. Const. art. VII, § 10(A),[5] plaintiffs filed a motion for summary judgment seeking "the immediate return of their property in the possession of these two government entities. . . ." *Mellor*, 370 So.3d at 389. The district court granted summary judgment and ordered the defendants to remit the funds into the registry of the court. *Id.*

Before this Court, defendants relied on *Crooks*, 359 So.3d 448, and argued that the district court order violated La. Const. art. XII, § 10 and La.R.S. 13:5109(B)(2) because the funds were "public funds," not subject to seizure. *Mellor*, 370 So.3d at 394. Plaintiffs countered that the district court's order complied with La. Const. art. I, § 4(B)(1). *Id.* at 395. They argued that they were owed just compensation because defendants took their property, and that payment should be

---

[5] *Mellor v. Par. of Jefferson*, 21-858 (La. 3/25/22), 338 So.3d 1138.

made to them directly or paid into the court's registry for their benefit. *Id.* Thus, plaintiffs argued that *Crooks*, 359 So.3d 448, was inapplicable. *Id.*

As in *Crooks*, 359 So.3d 448, the *Mellor* Court found that the funds in question were "public funds" and not subject to seizure. *Mellor*, 370 So.3d at 396. We opined that even if petitioners were entitled to a judgment in their favor, the district court "overstepped its authority in ordering defendants to remit funds into the court's registry, as this unconstitutionally intrude[d] upon their delegated responsibility to appropriate funds, pursuant to Article XII, Section 10 of the Louisiana Constitution and Louisiana Revised Statute 13:5109 B (2)." *Id.* at 391 (footnote omitted). *Mellor* held, as did *Crooks*, 359 So.3d 448, that such orders "are a constitutional overreach." *Id.*

Notably, however, the *Mellor* Court reiterated the reasoning in *Crooks* that "a specific constitutional or statutorily provided exception will overcome the mandates of La. Const. art. XII, § 10 (C) and La. R.S. 13:5109 B (2)." *Id.* at 396 (citing *Crooks*, 359 So.3d at 452). Therefore, while both *Mellor*, 370 So.3d 388, and *Crooks*, 359 So.3d 448, were found to be instances of constitutional overreach, neither decision precluded mandamus in all instances. Both *Mellor* and *Crooks* noted one decision where this Court did find such authority to be appropriate was in *Jazz Casino*, 223 So.3d 488, which we find to be pertinent and akin to the case presently before us.

In *Jazz Casino*, 223 So.3d at 495, we held that the appropriation of funds to pay a refund judgment for overpaid taxes was a ministerial duty as mandated by La. Const. art. VII, § 3(A) and La.R.S. 47:1621. Therefore, a court could order a government agency to pay a taxpayer's refund judgment because a specific statutory provision mandated the payment of the judgment. *Jazz Casino*, 223 So.3d at 496. The Court in *Jazz Casino* distinguished the mandatory nature of the overpayment refund and expropriation compensation from the discretionary nature of paying judgments arising from matters of contract or tort. *Id.* We determined, based upon

17

the ministerial nature of the constitutional and statutory duties owed by the tax collector in connection with the taxpayer's refund judgment, that mandamus was appropriate.[6] *Id.* at 496-97.

In the case *sub judice*, there exists an express constitutional provision that provides, in part: "Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." La. Const. art. 1, §4(B)(1). This constitutional provision provides the authority, as was encompassed in our reasoning in *Mellor*, 370 So.3d 388, and *Crooks*, 359 So.3d 448, for a mandamus action against a political subdivision based on a judgment for inverse condemnation. For these reasons, we find the holdings of *Lowther*, 320 So.3d 369, and *Jazz Casino*, 223 So.3d 488, applicable to the case at bar; we further find that *Mellor*, 370 So.3d 388, and *Crooks*, 359 So.3d 448, although decided correctly under the facts and law, to be distinguishable from the case herein. A judgment for inverse condemnation, left unsatisfied, does not constitute the payment of just compensation. Therefore, we conclude, based on the mandates of La. Const. art. 1, §4(B)(1), that the payment of just compensation for a judgment arising from inverse condemnation is a ministerial, non-discretionary duty; therefore, mandamus may issue to enforce a final judgment for just compensation. Accordingly, via a mandamus action, the Neighbors may seek a court to compel the SWB's compliance with this constitutional mandate.

---

[6] Much like the argument advanced by the Neighbors in the case at bar, *Jass Casino*, 223 So.3d at 497, reasoned:

> To hold otherwise would allow the Secretary to disregard mandatory obligations under La. Const. art. VII, § 3(A) and La. R.S. 47:1621, under the guise that a court-issued mandamus ordering such refund violates the separation of powers doctrine. Such a result would render meaningless the constitutional guarantee under La. Const. art. VII, § 3(A) of "a complete and adequate remedy for the prompt recover[y] of an illegal tax paid by a taxpayer," as well as the statutory scheme authorizing the recovery of overpaid taxes rightfully belonging to the taxpayer and the legislatively mandated mechanism for enforcing a final judgment that authoriz[es] the refund of overpaid taxes.

The conclusion we reach herein is further supported by our prior recognition of the similarity between inverse condemnation actions and cases involving expropriation.[7]  Both actions arise from a "taking" implicating constitutional concerns of deprivation of property, and both are afforded the protections provided under La. Const. art. 1, §4(B)(1).  Additionally, in *State through Department of Transportation & Development v. Chambers Investment Company, Inc.*, 595 So.2d 598, 602 (La.1992) (citing *Reymond v. State, Through the Dep't of Highways,* 231 So.2d 375, 383 (1970)),[8] we opined that "the action for inverse condemnation arises out of the self-executing nature of the constitutional command to pay just compensation."  Indeed, given this common constitutional mandate, a finding that mandamus may lie for a taking via expropriation, but not for a taking by means of inverse condemnation, seems to run afoul of that mandate.  We again reiterate that the presence of a constitutional mandate relative to takings is wholly distinguishable from cases where the judgment sought to be enforced through mandamus arises from tort or contract.  Although not determinative of the result we reach in this case, the foregoing similarities align with our determination herein.[9]

---

[7] See, for example, *Bayou Bridge Pipeline, LLC v. 38.00 Acres, More or Less, Located in St. Martin Parish*, 20-1017, pp. 6-7 (La. 5/13/21), 320 So.3d 1054, 1059, wherein we opined:

> [R]egardless of the specific procedural posture of the case, i.e., whether the proceeding is an expropriation matter (where the damage to property is anticipated) or an inverse taking (where the damage to the property occurred before suit was filed), "one thing that both actions [ ] have in common . . . is our state constitution. *Larkin Dev. N., L.L.C. v. City of Shreveport*, 53,374, p. 13 (La. App. 2 Cir. 3/4/20), 297 So.3d 980, 990, *reh'g denied* 7/16/20, *writ denied*, 20-01026 (La. 12/22/20), 307 So.3d 1039.  Moreover, "we note that the courts of this state have held that both expropriation and inverse condemnation actions arise from the same constitutional mandate of just compensation." *Id*. p. 16, 297 So.3d at 991.

[8] See also *Crooks*, 340 So.3d at 581; *Faulk v. Union Pacific Railroad Co.*, 14-1598, p.10 (La. 6/30/15), 172 So.3d 1034, 1044; *Avenal v. State*, 03-3521, p. 26 (La. 10/19/04), 886 So.2d 1085, 1104; *Constance v. State Through Dep't of Transp. & Dev. Office of Highways,* 626 So.2d 1151, 1156 (La.1993).

[9] We note that both parties in this case discuss *Parish of St. Charles v. R.H. Creager, Inc.*, 10-180, p. 13 (La.App. 5 Cir. 12/14/10), 55 So.3d 884, 892, *writ denied*, 11-118 (La. 4/1/11), 60 So.3d 1250, which held that "the judiciary has the constitutional authority to issue a mandamus in [an expropriation] matter [to compel payment of a final judgment] if warranted."  Although we denied writs in *Creager*, it was cited by the Court in *Lowther*, 320 So.3d at 372.  It was also cited, but

## CONCLUSION

For the foregoing reasons, we hold that the appellate court did not err in finding that the instant mandamus suit was not barred by res judicata. We further hold that payment of a money judgment based on inverse condemnation under the Louisiana Constitution is a ministerial duty; thus, it may be enforced via mandamus. Accordingly, the appellate court did not err in reversing the district court's ruling sustaining Korban's exception of no cause of action.

Our decision herein, that mandamus may lie to compel the payment of the judgment resulting from the SWB's inverse condemnation of the Neighbors' property, however, does not fully resolve the matter. Because the district court ruled that the Neighbors' failed to state a cause of action, it did not address, nor did the appellate court, the appropriate time and manner for said judgment to be satisfied. While La. Const. art. 1, § 4(B) mandates the payment of just compensation, it does not delineate the time or manner therefor. Mindful of the reality of the public policy implications on the public fisc, and in honoring any statutory limitations applicable to the SWB, we remand this matter to the district court to tailor a plan for a remedy that ensures satisfaction of the judgment at issue within a reasonable period of time.

## DECREE

The judgment of the appellate court is affirmed, and the matter is remanded to the district court for further proceedings consistent with this opinion.

**AFFIRMED AND REMANDED TO THE DISTRICT COURT.**

---

found to be distinguishable, in M*ellor*, 370 So.3d at 396-97, which noted that *Creager* so held despite its finding that the expropriation statutes were not directly applicable. In the instant case, the appellate court, found "it instructive that in *Creager*, the Takings Clause of the Louisiana Constitution governed and mandamus was proper, even though the expropriation statute was not directly applicable." *Watson Memorial Spiritual Temple of Christ*, 382 So.3d at 1043. The appellate further opined "that no reason exists to treat expropriation and inverse condemnation differently, as the same constitutional protections arise in both." *Id.* (citing *Avenal v. State*, 99-127 (La.App. 4 Cir. 3/3/99), 757 So.2d 1, 12, *writ denied*, 00-1077 (La. 6/23/00), 767 So.2d 41, *cert. denied sub nom. Louisiana Dep't of Nat. Res. v. Avenal*, 531 U.S. 1012, 121 S.Ct. 568 (2000)). Similar reasoning is employed herein.

20

# SUPREME COURT OF LOUISIANA

### No. 2024-C-00055

### WATSON MEMORIAL SPIRITUAL TEMPLE OF CHRIST D/B/A WATSON MEMORIAL TEACHING MINISTRIES, CHARLOTTE BRANCAFORTE, ELIO BRANCAFORTE, BENITO BRANCAFORTE, JOSEPHINE BROWN, ROBERT PARKE, NANCY ELLIS, MARK HAMRICK, ROBERT LINK, CHARLOTTE LINK, ROSS MCDIARMID, LAUREL MCDIARMID, JERRY OSBORNE, JACK STOLIER, AND WILLIAM TAYLOR

### VERSUS

### GHASSAN KORBAN, IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF THE SEWERAGE AND WATER BOARD OF NEW ORLEANS

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans*

**WEIMER, C.J.**, additionally concurring.

I concur in the opinion. Unquestionably, both the United States Constitution and the Louisiana Constitution allow the taking of private property for a public purpose, but that right is tempered with the obligation to pay compensation. The Louisiana Constitution mandates compensation for the taking and for damages to someone's property. La. Const. art. I, § 4(B)(1) ("Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit."). The challenging issue in this matter is the use of mandamus pursuant to La. C.C.P. arts. 3861-3863, often referred to as an "extraordinary remedy." See, e.g., **Crooks v. State Through Dep't of Nat. Res.**, 22-625, p. 3 (La. 1/27/23), 359 So.3d 448, 450. Noteworthy, the plaintiffs did not turn to the use of this extraordinary remedy immediately upon final judgment, as documented in the majority opinion.

In this matter, the plaintiffs were able to convincingly demonstrate a conscious indifference[1] to payment by those cast in judgment. The use of the extraordinary remedy of mandamus should be coupled with proof of conscious indifference to pay the judgment. This proof should include an evaluation of the time since rendition of the judgment and the efforts made to satisfy the judgment. The opinion properly recognizes the practicalities that must be balanced in ensuring payment, even when mandamus is appropriate.

---

[1] "Conscious indifference" means an awareness of and disregard for the harm that one's actions could do to the interests or rights of another. *Indifference*, BLACK'S LAW DICTIONARY (11th ed. 2019). A review of Louisiana jurisprudence suggests that the term has not been used in the context of a constitutional violation but has been adopted in the analysis of tortious conduct. See, e.g., **Lester v. BREC Foundation, et al.**, 22-0514, pp. 15-16 (La.App. 1 Cir. 11/4/22), 356 So.3d 18, 30 ("In the context of a tort, 'indifference' (including 'conscious indifference') means conscious disregard of the harm that one's action could do to the interests or rights of another.")

2

# SUPREME COURT OF LOUISIANA

## No. 2024-C-00055

**WATSON MEMORIAL SPIRITUAL TEMPLE OF CHRIST D/B/A WATSON MEMORIAL TEACHING MINISTRIES, CHARLOTTE BRANCAFORTE, ELIO BRANCAFORTE, BENITO BRANCAFORTE, JOSEPHINE BROWN, ROBERT PARKE, NANCY ELLIS, MARK HAMRICK, ROBERT LINK, CHARLOTTE LINK, ROSS MCDIARMID, LAUREL MCDIARMID, JERRY OSBORNE, JACK STOLIER, AND WILLIAM TAYLOR**

## VS.

**GHASSAN KORBAN, IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF THE SEWERAGE AND WATER BOARD OF NEW ORLEANS**

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans*

**GRIFFIN, J., additionally concurs and assigns reasons.**

Because most provisions of the Declaration of Rights are self-executing,[1] and use mandatory language (e.g., "shall" and "shall not"), their enforcement is distinguishable from contract and tort. *See Gauthreaux v. City of Gretna*, 23-0606 (La. 6/21/23), 363 So. 3d 254, 255 (Griffin, J. concurring in the denial of the writ); John Devlin, *Louisiana Constitutional Law*, 54 LA. L. REV. 683, 730-31 (1994). Thus, prohibitions found in La. Const. art. XII, §10 and La. R.S. 13:5109(B)(2) do not apply to most of the Declaration of Rights per design of the framers. *See* Lee Hargrave, *"Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974*, 43 LA. L. REV. 647, 656-57 (1983). The Louisiana Constitution protects against inverse condemnation by stating that "property *shall not be taken or damaged…*" La. Const. art. I, § V (B)(1) (emphasis added). Plaintiffs herein seek mandamus of a self-executing, mandatory provision of the Declaration of Rights.

---

[1] This is also supported by the implications of La. Const. art. I, § 22. A non-self-executing provision does not use mandatory language or, instead, specifically exempts itself. *See* La. Const. art. I, § 25.